## ·HUGHES v. SNELL *et al.*

### No. 824. Opinion Filed May 9, 1911.

1. **CONTRACTS—Validity—Violation of Statutes—Contracts Excepted.** To the general rule that an act in violation of a statute· or municipal ordinance forbidding it is void, there is the exception that when the statute or ordinance is for the purpose of raising revenue and does not make the act itself void, and the act is not *malum in se* nor detrimental to good morals.

2. **BROKERS—Real Estate Agents—Failure to Pay License Tax—Effect on Contracts.** A municipal ordinance, enacted for the declared purpose of raising revenue, provided that parties engaged as real estate agents should pay an annual license tax and that it should be unlawful for any person to conduct such business without having first paid the tax, and made the violation thereof a misdemeanor. An agent who had failed to pay the tax and secure a license brought suit to recover commissions on a sale made. The trial court held that such failure was no defense to the action. Held, not error.

(Syllabus by the Court.)

*Error from Oklahoma County Court; Sam Hooker, Judge.*

Action by A. V. Snell, H. L. Paddock, and John Sherman, Jr., partners, against John R. Hughes. Judgment for plaintiffs, and defendant brings error. Affirmed.

*S. A. Byers* and *W. L. McCann,* for plaintiff in error.
*Snyder, Owen & Lybrand,* for defendants in error.

DUNN, J. This case presents error from the county court of Oklahoma county and is an action by the defendants in error, as partners in the real estate brokerage business conducted in Oklahoma City, against the plaintiff in error, John R. Hughes, to recover commission earned on a sale of certain real property. In the amended answer by the defendant filed in the said court it was alleged that the sale and the business out of which the same grew on the part of plaintiffs was prohibited and made unlawful by valid ordinances of the city of Oklahoma City, in that the said parties had failed to procure a license to permit them to carry on and engage in the business of real estate agents or brokers as re-

quired therein, and hence that the contract was unenforcible and void. Copy of the said ordinances was set out and the salient features thereof are as follows:

"Sec. 1. For the purpose of raising a revenue for said city there is hereby levied a license tax on each and every business hereinafter mentioned, within the corporate limits of Oklahoma City, Oklahoma * * * Real Estate agent, firm or broker * * * $15.00 per year * * * ."

It is then provided, section 5, "that it shall be unlawful for any person, firm, or corporation by principal or agent to carry on, conduct, or maintain or follow any occupation or business," etc., "without having complied with all the provisions of this ordinance." It is then provided, section 6, that any person found guilty of violating any of the provisions shall on conviction be fined $25.00, etc. This defense was, on motion, stricken from the answer, and that it was available and a complete defense to plaintiff's cause of action is the only contention made by the defendant in this court.

It would be a hopeless task to endeavor to reconcile the opinions of the different appellate courts on this question, and we shall not undertake to do so. In our judgment the ordinance herein was merely a revenue measure and the penalties set forth therein are the only ones contemplated by it. It does not pretend to deny a recovery upon contracts made in violation of it, nor is the business in itself of such a character that it may be concluded that the ordinance was passed for the purpose of suppressing or rendering it less obnoxious. We will notice a few of the cases in which the doctrine we deem correct is discussed.

One of the best considered is that of *Vermont Loan & Trust Co. v. Hoffman et al.,* 5 Idaho, 376, 49 Pac. 314, 37 L. R. A. 509. Action was brought therein to recover on certain promissory notes which had been given to the appellant. The same defense was made therein as in the case at bar, and the court in the consideration thereof said:

"The first question that arises is this: Was the transaction void, or is the plaintiff precluded from recovering on said contract by reason of its failure to procure a license to do the business of

loaning money? Sec. 1636, Rev. Stat., provides: 'A license must be procured immediately before the commencement of any business or occupation liable to a license tax from the tax collector of the county where the applicant desires to transact the same, which license authorizes the party obtaining the same in his town, city or particular locality in the ———— county to transact the business described in such license * * *' Sec. 1644, Rev. Stat., requires 'persons, associations, or corporations engaged in the occupation of banking, loaning money at interest,' etc., to pay a license tax, the amount of such tax varying according to the classification enumerated in said section. Section 6983, Rev. Stat., is in the following language, to wit: 'Every person who commences or carries on any business, trade, or profession or calling for the transaction or carrying on of which a license is required by any law of this territory (state) without taking out or procuring the license prescribed by such law, is guilty of a misdemeanor.' The appellants contend that under the statutes, *supra*, the consideration for the notes and mortgage in question was illegal; that the respondent was prohibited from doing such business; that the contract of the parties was made in violation of law, and therefore void; that owing to the illegality of the consideration of said contract, the same having been made in violation of law, the court could grant no relief to the respondent. Counsel for appellants has spent much time in research, and has cited many authorities in support of his position. The general rule, as urged by appellants, that a contract founded on an act forbidden by a statute under a penalty is void, although it be not expressly declared to be so, is correct and well established by authority. But in applying the rule many courts have excepted from its operation one class of cases, viz., when the statutory prohibition is found in a statute enacted for the purpose of raising revenue or the regulation of traffic or business, when, unless it is manifestly the intention of the statute to make the contract void, the court will treat the contract as valid. Mr. Sutherland, in his admirable work on Statutory Construction, at sec. 336, in treating the question under consideration, very aptly says: 'When a statute is for revenue purposes, or is a regulation of a traffic or business, and not to prohibit it altogether, whether a contract which violates the statute shall be treated as wholly void will depend on the intention expressed in the particular statute. Unless the contrary intention is manifest the contract will be valid.' And in support of the rule Mr. Sutherland, in a footnote, cites many authorities among the following

which support the text, as we have seen by a careful examination of the cases."

The court then cites a large number of authorities supporting the doctrine therein set out. It is to be noticed that the violation of the law in that case, as in the one at bar, was denounced as criminal and made a misdemeanor.

The Supreme Court of Maryland in the case of *Coates v. Locust Point Co.,* 102 Md. 291, 5 Am. & Eng. Ann. Cases, 895, held that in that state the case of *Banks v. McCosker,* 82 Md. 518, 34 Atl. 539, was conclusive on the case then before it, and said:

"In that case this court held that the failure of a hawker and peddler to take out the license required by the code did not affect the contract between the unlicensed peddler and the purchaser of goods from him. The statute furnished more reason for such a contention as that made by the appellee than the one applicable to real estate brokers does. Sec. 24 (formerly 27) of art. 56 provides that 'no hawker or peddler shall buy for sale out of the state, or buy to trade, barter, or sell, or offer to trade, barter, or sell within the state, any goods, wares, or merchandise until he shall have first taken out a license for that purpose.' The penalty prescribed by that statute for its violation is the imposition of a fine, and this court said: 'When the law declares the consequence of its violation, the contract can in no sense be regarded as illegal, unless the law itself, either by its manifest intent or in express terms, so declares it. The provisions of the code referred to neither directly nor indirectly refer to any consequences save the payment of a fine for a violation of the law, and the failure to pay such fine, so that it can only be regarded as a revenue measure, and does not affect the contract between an unlicensed peddler and the purchaser of goods from him.' The statute now under consideration is to be found in art. 4 of the Local Code, applicable to Baltimore City. Sec. 695 provides that 'any person, copartnership or firm applying for the same, and paying the sum of money herein provided, may obtain a license for carrying on the business of real estate broker in the city of Baltimore,' etc. Sec. 696 makes it a misdemeanor and imposes a fine for carrying on such business without first obtaining a license, but does not declare invalid a contract made by one who was not licensed or indicate that such should be the result. It would seem, then, to be clearly 'a revenue measure,' such as was spoken of in *Banks v. McCosker.* We are

therefore of opinion that the plaintiff was not precluded from recovering by reason of anything in that local law."

The case of *Watkins Land Mortgage Co. v. Thetford*, 43 Tex. Civ. App. 536, was one brought for the recovery of a commission for the sale of land. The defense was made that the Mortgage Company had not paid the occupation tax, and that on account thereof was prevented from maintaining a suit to recover commissions. Speaking to this subject, the Court of Civil Appeals of that state said:

"Appellant's first assignment of error complains of the action of the court below in sustaining appellee's special exceptions to that part of appellant's answer which sets up as a defense to this suit the failure of appellee to pay his occupation tax as a land agent or real estate broker prior to the transaction upon which this suit is based, appellant's contention being that under the laws of Texas the failure of appellee to pay his occupation tax and to obtain a license to pursue the business of real estate agent or broker prevents him from maintaining this suit to recover his commissions, which he alleges accrued to him in the pursuit of such business. We do not think this contention is sound. In our opinion it was not the purpose or intention of the statute providing for the payment of an occupation tax by a real estate agent or broker to make such payment a prerequisite to his right to pursue the occupation. The civil statutes providing for the tax, and the penal statutes making it a misdemeanor to pursue the occupation without paying the tax, were enacted for the purposes of providing a source of revenue for the state and the enforcement of the collection thereof."

It is also said on the same subject in the case of *Amato v. Dreyfus* (Tex. Civ. App.) 34 S. W. 450:

"Assuming that appellee was, as to the service alleged, one pursuing the occupation of land agent, within the meaning of the former article, the question is solved by determining whether the prohibition contained in the latter article is directed against the person or the business. It is plain to us that the primary object of the statute is to provide revenue, and that it was not its purpose to repress or prohibit the several occupations it undertakes to license. The provision is that no person shall pursue any occupation unless he has such a receipt, which means that the person is prohibited, not the occupation. No consideration of public policy, nor one looking to the regulation of the business, enters into

the statute in question. The purpose sought to be observed is altogether different. It could with as much propriety be asserted that a merchant carrying on business under the same circumstances would not be allowed to enforce payment for goods sold, nor a banker for money loaned. If the Legislature intended that the act should be so far-reaching in its operation, it would certainly have made such intention clear. The view is amply sustained by authority."

The Supreme Court of the United States in the case of *Harris v. Runnels*, 12 How. 79, likewise had occasion to deal with the principle involved in the case at bar, and the Court of Appeals of Virginia in the case of *Niemeyer et al. v. Wright*, 75 Va. 239, discussing the proposition, reviewed the holding of the Supreme Court of the United States in the *Harris v. Runnels* case, and said:

"It is conceded that, as a general rule, a contract founded on an act forbidden by a statute under a penalty is void, although it be not expressly declared to be so (*Middleton v. Arnolds*, 13 Gratt. 489), but it does not *necessarily* follow that the unlawfulness of the act was meant by the Legislature to avoid a contract made in contravention of it. The question is, in a great measure, one of legislative intent, and its determination depends, as in other cases, on the construction of the statute. * * * The action (*Harris v. Runnels, supra*) was upon a note given for the price of slaves, which, as admitted by the pleadings, had been brought into the state of Mississippi and sold in violation of a law of the state, and the defense was that the contract of sale and the note were void because they were in contravention of the statute. The object of the statute was to prevent the introduction of convicts into the state, and to effect that object the importation of all slaves was subjected to regulation. The act declared that it should not be lawful (Hutchinson's Mississippi Code, 1798 to 1848, p. 515) for any person to import slaves into the state without having previously obtained a certificate, duly acknowledged, &c., of two freeholders in the county of the state or territory from which the slaves were brought, descriptive of the slaves and that they had not been guilty or convicted of any felony. The seller was required to register the certificate in the orphans' court; and it was further enacted that if any person

sell or purchase any slave or slaves without having complied with the provisions of the act, he should pay one hundred dollars for every slave so sold or purchased. There were other provisions of the act which need not be noticed. It is to be observed that while the act declared it 'should not be lawful' to import slaves without complying with the regulations prescribed, it does not declare in terms that a contract in contravention of the statute should be void. It only imposed a penalty on seller and buyer for a violation of the provisions. The Supreme Court was of opinion, upon a consideration of the whole statute, that, notwithstanding the penalty inflicted, it was not the intention of the Legislature to make the contract void."

Nor do we believe in the case at bar that the ordinance before us intended to make the contract void. The whole end and purpose of the license tax is set forth in the first sentence of section 1, which is for the purpose of raising a revenue for the city. It was not an act to prohibit a business, nor to render contracts made by parties void and unenforceable, merely for the reason that the license tax had not been paid. The only penalty prescribed is that of a fine, and we believe that this was all that was ever intended. The following authorities, supplementing those from which we have quoted, may be noted: *Sunflower Lumber Co. v. Turner Supply Co.*, 158 Ala. 191; *State, &c., Insurance Ass'n v. Brinkley Stave & Heading Co.*, 61 Ark. 1; *Mandlebaum v. Gregovich,* 17 Nev. 87; *Justice v. Rowand,* 10 Philadelphia, 623; *Walker v. Baldwin & Frick et al.,* 103 Md. 352, 63 Atl. 362; *Smith v. Sharp et al.,* 162 Ala. 433, 50 So. 381; *Cobb v. Dunlevie,* 63 W. Va. 398, 60 S. E. 384; *Ober v. Stephens,* 54 W. Va. 354, 46 S. E. 195; *Ruckham v. Bergholz,* 37 N. J. Law, 437; *Tooker v. Duckworth,* 107 Mo. App. 231, 80 S. W. 963; *Banks v. McCosker,* 82 Md. 518, 51 Am. St. 478.

Counsel for plaintiff in error, among other cases, call our attention to the fact that the question has been decided in the state of Kansas contrary to the conclusion which we have here reached: *Denning v. Yount,* 62 Kan. 218, 61 Pac. 803, 50 L. R. A. 103; *Denning v. Yount,* 66 Kan. 766, 71 Pac. 250; *Mayes v. Live Stock Ass'n,* 58 Kan. 717, 51 Pac. 215; *Mayer v. Hartman,*

77 Kan. 788, 90 Pac. 807. The question was again before the Supreme Court in the case of *Manker et al. v. Tough,* 79 Kan. 46, 98 Pac. 792, where, in a discussion of the previous holding, Justice Smith, who prepared the opinion for the court, said:

"Why should one party to a contract be allowed to avoid the payment of debts he has contracted to pay and thus gain an unconscionable advantage because the other party deliberately, or through inability or mere oversight, has failed to discharge an obligation to the city when there is available to the city both a civil remedy for the wrong and a penal remedy against the wrongdoer? Was it any benefit to the city in *Yount v. Denning, supra,* that one party was relieved from paying the other an agreed compensation for service actually rendered, or in *Mayer v. Hartman, supra,* that one party was enabled to cheat his neighbor out of coal worth nearly $1,000? Is not the penalty entirely disproportionate to the offense, especially as, when it has been suffered, neither the civil nor the penal action by the city has been abated? In the present state of the law, if these questions are not to continue to arise, it devolves upon the Legislature to modify the law. As the law has been construed for a long time by this and most other courts of last resort, it appears to furnish an inducement to evil-disposed persons to watch opportunities to contract with any one upon whom a license tax has been imposed, at a time when, for perhaps only a day, he has neglected to pay his tax, and thus acquire a merchandise or service without payment therefor. The denial of a remedy upon the illegal contract is, in effect, tantamount to a penalty or fine in the amount the party by the terms of the contract is entitled to recover."

From the foregoing discussion, as well as the opinion of the concurring justices, Porter and Benson, it is not difficult to gather that the conclusion which we have here reached is not far from the views entertained by that court as at present constituted, which, however, on this question seems bound by the doctrine of *stare decisis* announced in the authorities noted. We are not so bound, and the argument of Justice Smith and the other justices presents to our minds insurmountable reasons why we should not be.

It therefore follows that the judgment of the trial court is affirmed.

All the Justices concur.