## INLAND COMPRESS CO. v. SIMMONS.

No. 7560—Opinion Filed July 11, 1916.

(159 Pac. 262.)

**1. Warehousemen—Limitation of Liability —Validity.**

A contract, executed by a compress company in this state, which seeks to relieve from liability the company for loss by damage, fire, flood, or other agencies, unless caused by the willful act or gross negligence of the company, is against the public policy of the state, and therefore void.

**2. Warehousemen — Liability — Care Required.**

A cotton compress in this state is a bailee for hire, and under the statute must exercise at least ordinary care for the preservation of property intrusted to it.

(Syllabus by Hooker, C.)

Error from County Court, Bryan County; J. L. Rappolee, Judge.

Action by J. E. Simmons against the Inland Compress Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Utterback & MacDonald, for plaintiff in error.

Hayes & McIntosh, for defendant in error.

Opinion by HOOKER, C. On the 7th day of February, 1914, J. E. Simmons filed suit in the county court of Bryan county, against the Inland Compress Company, and alleged that on the ———— day of December, 1913, he delivered to it 10 bales of cotton to be stored and compressed, and that he paid to said defendant 50 cents a bale for storage, the defendant company being at that time in the compress and storage business of cotton. and that in addition to its compress business it would receive from the owners of cotton the same for storage the same as warehousemen, and would charge for said care and storage the sum of 50 cents per bale; that said defendant had a considerable space covered with concrete, and a large part of a block, upon which it stored cotton upon the ground; that after he left his cotton with the defendant for storage he saw that the same was being damaged by water which accumulated on the concrete floor, and he took some 2x4's and put the same under the cotton, so that the water would run under the bales and pass off, and that thereafter the defendant, its agents and employes removed said cotton from said 2x4's and placed the same where loose cotton accumulated, and under the eaves of the house, so that the rain would run from the house onto the cotton, and the loose cotton that had accumulated around the bales caused the water to stand, and the bales of cotton absorbed the dampness therefrom; and that by reason thereof 600 pounds of his cotton was damaged, which was of the reasonable value of $75.72, and that in addition thereto, it was necessary before he could sell said bales of cotton to remove a part from each bale at an expense of $2.50 per bale. It is further claimed that said loss and damage was caused by the negligence and want of care on the part of the company in failing to keep said cotton in a reasonably safe place and removing the same from the 2x4's upon which the plaintiff had placed it and putting the cotton under the eaves of the house. To this petition the defendant filed a general denial. Upon the trial of this cause it developed: That on the 5th day of September, 1913, the plaintiff, J. E. Simmons, purchased on the streets of Durant, Okla., 10 bales of cotton, and delivered the same to the defendant, which said defendant was. at the time, engaged in the compress business, and received cotton and stored the same on its yards for the purpose of compressing. That when said cotton was delivered to said defendant it issued its customary compress tickets, which tickets are in the following form:

"Inland Compress Company.
"Durant, Okla., 9/6/13.

"One bale cotton, for account of J. E. Simmons, will be delivered to the holder hereof on return of this receipt and payment of all charges. Not responsible for loss by damage, fire, flood or other agencies, unless caused by the willful act or gross negligence of this company.    J. E. Wimsatt, Supt."

That the said J. E. Simmons turned the said tickets to the bank, and that the bank paid the purchase price of the cotton. That he saw the cotton was being damaged by the rain, in that, it was so placed upon the platform that the water from the roof of the building was thrown upon it, and that he made a complaint to the superintendent of the company, but that said cotton was not moved, and thereafter the plaintiff below placed some 2x4's under the cotton, so that the water could pass freely thereunder, but that the defendant removed the same and as the result thereof plaintiff's cotton was damaged as alleged in the petition.

About the only question presented by this appeal is whether the cotton tickets executed by the company and delivered to the plaintiff at the time the cotton was delivered by him to the company (copy of which is shown above) is a legal contract and enforceable in the courts of this state, it being contended by the plaintiff in error that the cotton tickets did constitute a contract, and that under the terms of the contract it is not liable for loss by damage, fire, flood, or other agencies unless by the willful act or gross negligence. The facts in the instant case show that the plaintiff in error received this cotton for the purpose of compressing the same, for which it received compensation. and that the storage of the cotton was an incident of the business in which it was engaged of compressing the same. This court, in the case of Vogel & Son v. Braudrick, 25 Okla. 259, 105 Pac. 197, said:

"Where the keeper of a cotton yard received 10 cents for weighing each bale and 15 cents for hauling the same to the railway station for shipment, and it was the custom of said keeper to keep said cotton in said yard between the time of weighing it and hauling it for shipment, such keeping, being a necessary incident of the business in which the keeper makes a profit, constitutes him a bailee for hire, although he may not have received any compensation for the actual storage."

In the case of Union Compress Co. v. Nunnally, 67 Ark. 284, 54 S. W. 872, the Supreme Court of that state said:

"A compress company is liable for want of care in keeping cotton stored with it for compression if it expected either to charge storage for the cotton or to get compensation for keeping same in the way of charges for compression.

"When a bailment is reciprocally beneficial to each party, the bailee is answerable for want of ordinary care." St. Louis S. W. Ry. Co. v. Henson, 61 Ark. 302, 32 S. W. 1079; 3 Am. & Eng. Enc. Law, p. 746.

Also the Supreme Court of Pennsylvania, in the case of Woodruff v. Painter, 150 Pa. 91. 24 Atl. 621, 16 L. R. A. 451, 30 Am. St. Rep. 786, said:

"A bailment is for hire, although no hire is paid, when it is a necessary incident of a business in which the bailee makes a profit."

Applying the rule laid down in these cases to the evidence in the instant case, we are of the opinion that the plaintiff in error was a bailee for hire of the cotton in question, and, as such, was subject to the same responsibility and duties; and, for the failure to exercise that degree of care of the property in its possession that the law requires of a bailee for hire, it is responsible for whatever damages that said property suffers as the proximate result caused by the failure of the company to exercise such care. That being true, it must have been the duty of the compress company in this case to have exercised reasonable care in the storing of the property of the defendant in error, and for its failure so to do it must be held liable, unless the provision of the cotton tickets, which sought to limit its liability to injuries caused by the willful act or gross negligence of the company, should prevail. Section 1109 of the Revised Laws of 1910 provides:

"A bailee for hire must use at least ordinary care for the preservation of the thing bailed."

The writers on bailments seem to agree that the parties to a bailment contract may regulate the responsibilities of the bailee by special contract, but it is also universally agreed that the terms which public policy and legislation of the state impose are not to be overleaped by contractual relations, and, if so, the contract will be disregarded and declared void, and the bailee held in the same manner and to the same extent as if such contract never existed.

The public policy of a state must be determined by reference to its Constitution, the acts of its Legislature, and the judicial decisions of its courts. It is universally agreed and acceded to in this state that common carriers, on account of the relation that they occupy towards the public and the duty that they owe to the public generally, are prohibited by law from contracting against their own negligence. The reason for this requirement is apparent, and it would seem that the same cause which prohibits contracts of this character from being made by a common carrier would likewise prohibit contracts of like nature from being made by other enterprises which serve the public, and which conduct and carry on such a large and important part of the public business, which business is so essential to the commercial life of the people of the state. The Legislature of this state, by the provision of our statute above quoted, has provided that a bailee for hire must use at least ordinary care for the preservation of the thing bailed, and while this provision of the statute may be considered as a declaration of the general law on the subject of bailment, yet it also indicates the fixed, definite, and declared policy of the state with reference to the degree of care that all bailees for hire must use towards property intrusted to their care.

In this state cotton occupies such an important relation to the business life of the people of the state. and cotton compresses perform such an important duty to the general public, that it may be said that courts take judicial knowledge of the fact that compresses are in their nature, or rather in a sense, quasi public institutions. In fact the business of compressing cotton, by reason of its nature, the extent and the necessity therefor, is such that the public must use it, and it is of such public consequence, and affects the community at large to such an extent. that it is a public business, and as such should not be permitted to relieve itself from liability by contracts of the kind involved here. It will not suffice to say that this contract was a voluntary contract, and that the defendant in error was compelled to have his cotton compressed. for the same objection could be urged with the relation of the public to the railroads, the express companies and to other public utilities. It is said in volume 6. Corpus Juris, p. 1112, sec. 44:

"The parties to a bailment may diminish the liability of the bailee by special contract, the principle being that the bailee may impose whatever terms he chooses if he gives the bailor notice that there are special terms and the means of knowing what they are; and, if the bailor chooses to make the bailment, he is bound by them, provided the contract is not in violation of law or of public policy, and that it stops short of protection in case of fraud or negligence of the bailee."

While it cannot be contended that the plaintiff in error is a public warehouseman

within the provisions of our statute, yet, as a circumstance indicating the public policy of this state, it might not be amiss to notice section 8302 of the Revised Laws of 1910, which prohibits public warehousemen from inserting in the receipt any language limiting or modifying the liability or responsibility as imposed by the law of the state. Third volume, Enc. of Law (2d Ed.) p. 750, states the rule as follows:

"To what extent a bailee may limit his liability by special contract is not clear. It has been said by good authority that the bailee might contract not to be liable for any degree of negligence not amounting to gross neglect. for the latter being regarded as equivalent of fraud, the law will not tolerate such an indecency. as that a man may contract to be safely dishonest. But negligence in any degree being a wrong, the distinction is not apparent, and the better doctrine supported by authority would seem to be that a bailee cannot stipulate against liability for his own negligence." Lancaster County Nat. Bank v. Smith, 62 Pa. 47.

In the case of Pilson v. Tip Top Auto Co., reported in 67 Or. 528, 136 Pac. 642, the Supreme Court of Oregon had under consideration the question of the liability of a bailee for hire, and there stated the rule to be:

"It is the better rule that a bailee for hire cannot by contract so limit his responsibility to the bailor as not to be liable for his own negligence or the negligence of his agents and servants." Railroad Co. v. Lockwood, 17 Wall. (84 U. S.) 357, 21 L. Ed. 627; Louisville, N. A. & C. R. Co. v. Faylor, 126 Ind. 126, 25 N. E. 869; Pittsburgh. etc., Ry. Co. v. Higgs, 165 Ind. 694, 76 N. E. 299, 4 L. R. A. (N. S.) 1081; Camp v. H. & N. Y. S. Co., 43 Conn. 333; Davis v. C., M. & S. P. R. Co., 93 Wis. 470. 67 N. W. 16, 1132, 33 L. R. A. 654, 57 Am. St. Rep. 935; Lancaster County Nat. Bank v. Smith, supra; Memphis & C., R. I. & P. Co. v. Jones, 2 Head (Tenn.) 517; 3 Am. Eng. Enc. of Law (2d Ed.) 750.

We conclude that it would be against public policy in this state to permit the defendant in this case as a bailee for hire to contract in such manner as to relieve it of any responsibility for its own negligence, and that the provision of the receipt issued to the plaintiff in error attempting to relieve the company from any liability on account of damage, the result of its negligence, is void as against public policy. Therefore, the court did not err in instructing the jury to the effect that such provision of the contract would not protect the defendant against its own negligence.

The judgment of the lower court is affirmed.

By the Court: It is so ordered.