## CAMPBELL v. HOUSE.

No. 9266—Opinion Filed Dec. 10, 1918.

(176 Pac. 913.)

### 1. Contracts—Public Policy.

C. entered into a contract with H., an attorney at law, for services to aid, advise, and consult party of the second part in a matter then pending before the state' Corporation Commission, wherein cause 1906, the building of a new depot, was pending before said Corporation Commission, in the case of J. O. Hamilton et al., of Henryetta, v. St. Louis & San Francisco Railroad Company, defendants, which asked for new and adequate depot facilities. The contract further provides: "That the party of the first part agrees to pay to the party of the second part $500.00 when said order is made permanent and after all time for appeal has passed, or if appealed by the said San Francisco Railroad when said appeal has been confirmed by the Supreme Court of the state and when said order has been made, the actual and incidental expenses are to be paid, and the contract is conditioned that the state Corporation Commission in its said order make for the building of said depot and the same to be placed at or near the foot of Main street in the town of Henryetta and not further from the foot of said Main street than the same now stands, and that said contract was to be null and void if, the said Corporation Commission does not make said order, or if the same is ordered to be built at any other place or part of the city of Henryetta, and no part of the said five hundred dollars, or expenses, is to be paid by the party of the first part." Held, that the contract is not void as against public policy.

### 2. Attorney and Client—Action on Contract for Employment—Defenses.

In an action to recover upon the contract described in the first paragraph of this syllabus, the defendant pleaded as a defense that said depot was located at the point contracted, but that the plaintiff, in order to have the building so located, had to pay part of the purchase price of the lot upon which the building was located. Held, that such payment was not germane to the contract sued upon, and did not constitute a defense to the action.

(Syllabus by Collier, C.)

Error from District Court, Okmulgee County; Chas. G. Watts Judge.

Action by Harriet House, administratrix of the estate of Ed House, deceased, against J. H. Campbell. Demurrer to petition overruled, and demurrer to answer sustained, and defendant brings error. Affirmed.

William M. Matthews, for plaintiff in error.

Merwine & Newhouse, for defendant in error.

Opinion by COLLIER, C. In this action the defendant in error, an attorney at law, hereinafter referred to as plaintiff, seeks to recover from the plaintiff in error, hereinafter designated as defendant, the sum of $789.89, upon a contract.

The petitioner counts upon the contract, a copy of which is attached, and sets up amount of expenses incurred, and avers that he performed each and every obligation in said contract, and that there is now due from said defendant the sum of $539.89; that he has demanded payment thereof, and defendant has refused to pay the same. For a second cause of action. he avers that, after he had procured, by his legal services, from the Corporation Commission, the order requiring said depot to be placed at said point designated in said contract, the receivers of the St. Louis & San Francisco Railroad Company appealed from said order of said Corporation Commission to the Supreme Court of the state of Oklahoma; that the plaintiff at all times consulted and advised with the Attorney General of the state of Oklahoma in the conduct of said cause in said court last aforesaid, and assisted him in the legal work connected therewith, and vigorously pushed said appeal to an early conclusion; that said services so rendered by this plaintiff for the defendant herein were services rendered in addition to the legal services rendered in the contract hereto attached, and marked "Exhibit A"; that said services were accepted by the defendant herein, and were reasonably worth the sum of $250. The contract sued upon and attached to petition as "Exhibit A" is as follows:

"The State of Oklahoma, County of Okmulgee—ss.:

#### "Contract.

"Know all men by these presents that we, party of the first part, do hereby enter into the following contract with party of the second part, to wit:

"1st. We, the party of the first part, do hereby agree to pay to the party of the second part five hundred dollars ($500.00), together with all actual traveling expenses and incidental expenses, conditioned as follows:

"2d. The conditions of this contract is for the services of the party of the second part, rendered and to be rendered as follows:

"3d. To aid, advise and consult party of the first part in the matter now pending before the state Corporation Commission wherein cause 1906 the building of a new depot, is pending before said Corporation Commission,

wherein J. O. Hamilton et al., of Henryetta, v. St. Louis & San Francisco Railroad Company, defendants, asking for a new and adequate depot facilities. The same having been heard by the said Corporation Commission on January 13, 1914.

"4th. The party of the first part agrees to pay to the party of the second part, the said $500.00, five hundred dollars, when said order is made permanent and after all time for appeal has passed, or if appealed by the said San Francisco Railroad when said appeal has been confirmed by the Supreme Court of the state, and' when said order has been made the actual and incidental expenses are to be paid, itemized statement to be rendered by the party of the second part to the party of the first part.

"5th. This contract is conditioned that the state Corporation Commission in its said order make the order the building of the said depot and the same to be placed at or near the foot of Main street in the town of Henryetta, and not further from the foot of said main street than the same now stands.

"6th. This contract is to be null and void, if the said Corporation Commission does not make said order, or if the same is ordered to be built at any other place or part of the city of Henryetta, and no part of the said five hundred dollars, or expenses, is to be paid by the party of the first part.

"Made and entered into at Henryetta, this 27th day of February, A. D. 1914."

To said petition the defendant demurred upon the ground that said petition does not state facts sufficient to constitute a cause of action, which demurrer was overruled by the court, to which an exceptance was saved. Thereupon defendant filed an answer, which, omitting caption and signature, is as follows:

"Comes now the defendant, J. H. Campbell, and, answering the petition of the plaintiff heretofore filed in this cause, says:

"I. That he denies each and every allegation in said petition except those herein specifically admitted.

"II. The defendant alleges and says that the contract sued upon contains the following provision:

"'5th. This contract is conditioned that the state Corporation Commission in its said order made the order the building of the said depot and the same to be placed at or near the foot of Main street in the town of Henryetta, and not further from the foot of said Main street than the same now stands.

"'6th. This contract is to be null and void if the said Corporation Commission does not make said order, or if the same is ordered to be built at any other place or part of the city of Henryetta, and no part of the said five hundred dollars, or expenses, is to be paid by the party of the first part.'

"And that such provisions render said contract void as against public policy, in that the plaintiff assumed the obligation of procuring the location of a depot at a specific point in the city of Henryetta, and, in this connection, plaintiff alleges and says that a depot is a public building, and its location is a matter of public policy, and that the plaintiff, in agreeing to procure from the Corporation Commission an order to locate it at the foot of Main street in the city of Henryetta, violated the public policy of this state, and because thereof he cannot recover upon the contract set forth in plaintiff's petition.

"III. Defendant alleges and says that the contract sued upon contemplated the placing of said depot at the foot of Main street, without any conditions or requirements on the part of this defendant; he alleges that the point at which said station was ordered to be placed by said commission was not owned at that time by the St. Louis & San Francisco Railroad Company, but was owned by John Bastable, O. L. Bates, and Lewis Duncan, and that these parties would not sell or convey said premises to the said railroad company unless they were paid the sum of $4,250, and said railroad company was about to commence the construction of said depot on its own site, that not being a site at or near the foot of Main street; that the said railroad company offered to pay $1,500 on the purchase price of said site at the foot of Main street, but refused to pay anything more, and said Corporation Commission declined to make them pay the said sum of $4,250, and declined to make them pay more than $1,500; that this defendant and three other parties interested in the location of said depot were required to pay the sum of $2,750, in order to procure the location of said depot at the foot of Main street, and this defendant was required to pay of that amount the sum of $850.

"Defendant alleges and says that the order of the Corporation Commission being conditional, and this defendant having been required to perform the conditions therein specified as above set forth, at a large expense to him, the said plaintiff did not comply with his contract, and did not procure the location of said station at the point designated in said contract, and that he is therefore not entitled to recover.

"Wherefore, defendant prays that the plaintiff take nothing by his petition, that he go hence without day, and that he have and recover his costs herein laid out and expended."

To said answer plaintiff filed a demurrer upon the ground that said second and third defenses do not state facts sufficient to constitute defenses to the cause of action set forth in the petition, which demurrer was sustained by the court and exceptions saved by defendant.

This appeal is prosecuted to this court alone upon the action of the court upon said demurrers.

The assignments of error are as follows:

"I. The court erred in sustaining the demurrer of the defendant in error to the second and third grounds of defense set up in the answer of the plaintiff in error.

"II. The court erred in overruling the demurrer of the plaintiff in error to the petition of the defendant in error.

"III. The court erred in not holding that the contract sued upon was void as against public policy, in that the defendant in error had undertaken, for a consideration, to procure the location of a depot and railroad station at a certain designated point in the town of Henryetta, Okla.

"IV. The court erred in not holding that a railroad station is a public building and is impressed with a public service.

"V. The court erred in sustaining the demurrer to the third ground of defense set up in the answer of the plaintiff in error, in that the order of the commission, locating the depot at a designated point in the city of Henryetta, was a conditional order, and the terms and conditions of the agreement sued upon by defendant in error were not performed unless and until the conditions were fulfilled by the defendant in error."

It follows that the only question involved in this case is the validity of the contract sued upon and the second and third defenses interposed by the defendant.

We are of the opinion that the contract sued upon is not violative of public policy, and is an enforceable contract. The contract provides for the services of the defendant as an attorney before a quasi judicial tribunal—such a contract as an attorney has the right to make and have enforced—and the authorities cited in defendant's brief to sustain the contention that the contract violated public policy are not in point. The authorities cited by him do not refer to services to be performed by an attorney before a court or quasi court, but refer to contracts for the exercise of personal influence, and therefore the court did not err in overruling the demurrer to the petition.

"A contract between a client and his attorney for purely professional services to be rendered by the former is not necessarily invalid because part of the services is the procurement of legislative action by legitimate means, nor because the contract provides for a contingent fee. While public policy forbids the enforcement of an illegal or immoral act, it is equally insistent that when they are lawful and contravene none of its rules, they be duly enforced, and not set at naught, nor held invalid on a bare suspicion of illegality. An agreement between attorney and client for professional services to be rendered by the former in collecting facts, preparing and submitting to the proper authorities of the United States government arguments upon the merits of those holding Indian lands purchased from the government, for a reduction, and upon the justice and advisability of such reduction of the purchase price of such lands, is valid and enforceable. Stroemer v. Van Orsdel, 74 Neb. 132, 103 N. W. 1953, 107 N. W. 125, 4 L. R. A. (N. S.) 212, 121 Am. St. Rep. 713.

In Cherry v. City State Bank et al., 59 Okla. 267 159 Pac. 253, it is held:

"Where the owners of property located in a certain territory within a town, and parties engaged in business in said territory, enter into a contract, with the owner of a lot in said territory, by which they agree to pay not to exceed the maximum amount of rental stated in said contract so long as the building to be erected on the lot is occupied by a United States post office, not to exceed a period of 10 years, the petition showing that in pursuance of said contract a building was erected and a contract was entered into between the owner of the lot and the United States for the location of a post office on that lot for the period of 10 years at the nominal rent of $1 per annum, and petition showing that no improper or undue means were to be used, or were used, in securing the location of the post office, the contract was a binding obligation, and was not void as against public policy. * * *

"In the recent case of J. W. Davis, J. S. Hastings, and C. A. Thompson v. Board of County Commissioners of Choctaw County, 58 Okla. 77, 158 Pac. 294, opinion delivered by Mr. Justice Sharp, where the county commissioners of Choctaw county accepted from Davis, Hastings, and Thompson their bond, conditioned that, if the courthouse about to be erected in said county should be located on a certain block in the county seat, they would pay the county the excess cost thereof over and above the sum of $8,000, but not to exceed the sum of $15,000, and the commissioners, relying thereon, acquired title to said block by purchase and condemnation proceedings, at a total cost of $10,391.05, and thereupon instituted action against the makers of said bond to recover $2,391.05, the amount alleged to be due thereon, it was held that the bond was a valid obligation, and not violative of public policy, there being no charge that the county commissioners were improperly influenced, or that the public welfare was made subordinate to personal considerations or private gain, or that the location was made in disregard of the public interests, and in said opinion the cases of Fearnley v. De Mainville, 5 Colo. App. 441, 39 Pac. 73. Beal v. Polhemus, 67 Mich. 130, 34 N. W. 532, relied on by plaintiff in error in this case. were cited with approval. Jus-

tice Sharp said in the opinion: 'Contracts between public officials and private parties which subordinate the public welfare for personal benefit, or which are against the public good, are open to attack; but, where they involve nothing inconsistent with good morals and sound policy, no good reason is seen why they may not be made—not, at least, in cases such as that at bar. It is not uncommon for individuals peculiarly benefited to unite with municipalities in making public improvements, building highways, digging drains and ditches, building bridges, and providing sites for schoolhouses and other public buildings. Many public institutions in this state have been located as the result, partly at least, of local donations. See the acts of the Legislature locating the State Reformatory at Granite, the Eastern Hospital for Insane at Vinita, Industrial School for Girls at Chickasha. In fact, the seat of government and the permanent capital of the state was located in Oklahoma City as a result of a free site for the capitol building and executive mansion, certain cash donations, and 650 acres of land, including site for capitol and executive mansion.' "

In Stanton v. Embry, 93 U. S. 557, 23 L. Ed. 983, it is held:

"Professional services, to prepare and advocate just claims for compensation, are as legitimate as services rendered in court in arguing a cause to convince a court or jury that the claim presented or the defense set up against a claim presented by the other party ought to be allowed or rejected. Parties in such cases require advocates; and the legal profession must have a right to accept such employment, and to receive compensation for their services; nor can courts of justice adjudge such contracts illegal, if they are free from any taint of fraud, misrepresentation, or unfairness."

The fact that the consideration to be paid for the services to be rendered was contingent does not affect the contract. In Bergen v. Frisbie, 125 Cal. 168, 57 Pac. 784, it is said:

"As tending to indicate the immorality of the contract, the contingent character of the fee works no such result. The contract is good or bad regardless of that question. * * * The means and manner to be employed are the all-important factors in marking the validity or invalidity of the contract. We see no one of its provisions that stamps it void as against public policy and good morals. Neither do we find anything in the evidence indicating any act done by the plaintiffs that to any degree could be construed improper. The employment of persons to influence legislation, or to influence decisions of the land department, or even the de-

cisions of judicial tribunals, in a proper way, is not against sound public policy, and this too, even though the compensation for the labor to be performed is contingent upon successful results. The means and methods to be used must be improper, or else such employment is perfectly legitimate in the eyes of the law. We do not see how a contract upon its face would be void as against public policy whereby attorneys were retained by a party litigant to assist in securing a favorable decision from this court upon litigation pending before it, even though the compensation of such attorneys was to be contingent upon success. In the absence of anything to the contrary, this court would certainly assume it to be valid and enforceable at law. If such be the rule of law as to contracts pertaining to the judicial action of this court, that law is good enough to be applied upon a contract in a matter pending before the Secretary of the Interior."

The services contracted to be performed were in connection with the location of the depot by an order of a quasi-court, Corporation Commission, at a particular point in Henryetta, and there is nothing in the contract from which it can be imagined that the plaintiff had any connection whatever in providing the site of said location of said depot or that any services in that connection were to be rendered by him and the fact that the defendant contributed to the purchase of the site upon which the depot was located could not be pleaded as a valid defense to this action and the court did not err in sustaining the demurrer of the plaintiff to the second and third grounds of defense set up in the answer.

It is not averred in the demurrer interposed to the petition, or in the answer, that improper action was contracted to be taken, or was done by the plaintiff, under said contract.

Finding no error in the record, this case is affirmed.

By the Court: It is so ordered.