## ANDERSON v. REED et al.

No. 18336. Opinion Filed April 24, 1928.

Rehearing Denied Oct. 9, 1928.

Holtzendorff & Holtzendorff and Archibald Bonds, for plaintiff in error.

Robson & Moreland, for defendants in error.

RILEY, J. The plaintiff in error commenced this action below against the defendants in error upon two causes of action: First, to recover a balance due on a promissory note executed by defendants; and, second, to recover on an indemnity contract executed by defendants and given the plaintiff as a part of the transaction, indemnifying plaintiff from loss.

The record discloses:

In March, 1922, the plaintiff was owner of certain stock in the First National Bank of Claremore which defendants desired to purchase for a consideration of $1,000. At that time the plaintiff and defendant Flippin (C.-M. 56) were directors in the First National Bank. Prior to January, 1922, there were two banking institutions in Claremore, namely, the Farmers Bank & Trust Company, of which Flippin was director and cashier, and the First National Bank, of which plaintiff was a director. On January 1, 1922, the two banking institutions were consolidated under the name of the First National Bank. The plaintiff was continued as director and the defendant Flippin was elected director and made chairman of the board. Such was the situation of the institution and the parties when the plaintiff sold his stock to defendant. A contract was entered into between the parties, based upon a sale of plaintiff's stock, and payment was made therefor in this manner: Two hundred dollars cash, and a note for $800, upon which there was thereafter paid $300, leaving a balance due of $500. There was an additional basis for the sale; that was a written contractual indemnity on the part of defendants protecting plaintiff from loss by reason of any illegal or excessive loans which had been brought into the consolidated institution by reason of the merger, in view of plaintiff having been a director at the time of consolidation and his consequent personal liability in acquisition of such securities.

It subsequently developed that the consolidated institution had acquired from the Farmers Bank & Trust Company certain notes and securities, the securities based on incumbered real estate such as were not lawful for a national bank to acquire, and in the sum of $42,520.30. On August 25, 1922, the consolidated institution was closed by federal authority, but was reorganized in December, 1922. While closed and before reorganization the federal authorities required the directors to pay into the institution $42,520.30, represented by the illegal and excessive loans. The plaintiff and defendant Flippin each paid $8,997.88, representing their respective pro rata shares of the amount for which the directors were personally liable. The plaintiff paid his share on December 16, 1922.

Upon conclusion of plaintiff's evidence, a demurrer by defendant was sustained, and by the appeal the question is whether the evidence so offered, with inferences and conclusions to be reasonably and logically drawn therefrom, sustain the judgment so rendered. Singer v. Citizens Bank of Headrick, 79 Okla. 267, 193 Pac. 41.

Appellees contend the demurrer to the evidence was correctly sustained, for:

(1) There was no adjudication of liability against the plaintiff, the indemnitee.

(2) Plaintiff waived his right to sue by subsequent contract.

(3) The contract sued upon was violative of public policy and void.

Considering the adjudication of liability as a prerequisite for indemnitee's action, we observe that the same was not raised in the pleadings, unless it can be said that the second paragraph of the prayer contained in the answer raised it, wherein it was prayed:

"Or if it be adjudged that defendants are liable under the contract for and on account of the notes complained of in plaintiff's petition, then and in that event let it be adjudged that said amount is not ascertainable, and that this lawsuit is prematurely brought."

The prayer relates back to a pleading wherein it was alleged that Flippin was adjusting and collecting excessive loans constituting the basis of the liability and that the net loss is not yet ascertainable. So we find that adjudication of liability was not raised by the pleadings.

Section 5177, C. O. S. 1921, provides:

"Upon an indemnity against liability, expressly, or in other equivalent terms, the person indemnified is entitled to recover upon becoming liable."

There is no requirement that liability be judicially determined prior to suit. 31 C. J. 438, states the rule that the indemnitee may recover upon the contract "as soon as his liability has become fixed and established," and "the measure of damages is the loss sustained or the amount actually paid." 31 C. J. 434, sec. 28. 31 C. J. sec. 36, p. 440, in part, states:

"But, where his liability is clear and a defense to the suit would be unavailing, indemnitee may discharge a claim or demand against him and bring his suit for indemnity without waiting for its legality or validity to be ascertained by legal proceedings."

The text cited and authorities thereunder are in harmony with our statute, section 5177, supra, and adjudication is not indispensable. At the direction of the Comptroller of Currency, the indemnitee herein

paid $8,997.88 in liquidation of asserted liability against him said to have been incurred by reason of the excessive loans acquired by the First National Bank on January 1, 1922, he being at that time a director of the bank, and the record shows that defendant Flippin, also a director, paid a like amount. At least, then, payment by plaintiff of his liability was made with notice to the indemnitor, Flippin, and at least it may be deduced as reasonable that both considered adjudication of liability as well as adjudication of the amount futile.

There was nothing in the contract of indemnity requiring adjudication of liability. First Nat. Bank of Chandler v. Cleveland, 127 Okla. 176, 260 Pac. 80.

It may be mentioned that the making of such excessive loans as here considered upon incumbered real estate does not of itself render the loans void. National Bank v. Whitney, 103 U. S. 99, 26 L. Ed. 443. The debtor cannot raise the invalidity of such loan. Here the loans were not declared void, but prohibited. Kerfoot v. Bank, 218 U. S. 281, 54 L. Ed. 1042; Bank v. Mathews, 98 U. S. 629, 25 L. Ed. 190; Swope v. Leffingwell, 105 U. S. 3, 26 L. Ed. 939; Reynolds v. Crawfordsville Bank, 112 U. S. 413, 28 L. Ed. 736.

The United States statute, section 5239, U. S. R. S., vol. 6, Fed. Stat. Ann. 873, relative to such excessive loans, provides for:

(a) Forfeiture of the bank's charter.

(b) Personal liability of every director participating or assenting.

Yet we see no necessity of adjudication of liability when the same is apparent.

3 R. C. L. 467, expresses the view that liability may be enforced in advance and independent of forfeiture of the bank's charter, and:

"Before the dissolution of the bank and while it is open and carrying on its usual business, a loss caused by the wrongful act of the directors in making an excessive loan is an asset of the bank and the bank has the right to bring an action against them for such damages. * * *" Corsicana Natl. Bk. v. Johnson, 64 L. Ed. 153; Stephens v. Overstolz, 43 Fed. 771; Natl. Bank v. Wade, 84 Fed. 10; Cockrill v. Cooper, 29 C. C. A. 529.

See, also, Bowerman v. Mamner, 63 L. Ed. 1113, 250 U. S. 504, as to common-law liability in addition to the statutory liability.

There is a distinction recognized by the federal statute between a stockholder's liability and that of a director, so that cases holding that a stockholder's liability cannot be enforced until liquidation have no bearing upon a director's liability. Yet this is not a case based upon statutory, but contractual, liability.

We do not hold to the view that a judicial determination of liability is a condition precedent to a suit against an indemnitor.

As we view it, plaintiff was not estopped by his interest in the securities delivered to and held by defendant Flippin, and there was no waiver of rights by subsequent contract, for if plaintiff was entitled to recovery, upon his indemnity, the recovery upon the securities in which excess loans were represented would inure to the benefit of defendant. Defendant would be subrogated to the value of the salvage.

By a contract entered into in December, 1922, it was provided that all such securities would be assigned to defendant Flippin. He was made trustee for the collection thereof—this contract does not mention the former contract, upon which this suit is based. The latter contract does not modify, alter, supersede, or novate the former. The latter contract concerned additional parties.

In Continental Supply Co. v. Levy, 121 Okla. 133, 247 Pac. 967, it was said:

"One claiming that a contract modifies a prior contract must show that the latter contract is definite and certain as to the terms of modification, and the modification extends only so far as the terms are definite, certain, and intentional."

In Stevens v. First National Bank, 117 Okla. 148, 245 Pac. 567, it was held:

"The surety is entitled to be subrogated to all of the rights the creditor held against the debtor for such part of the indebtedness as the surety pays and satisfies, pursuant to the contract of suretyship."

The plaintiff testified, and the same is uncontradicted, that when he signed the latter contract he told defendant Flippin that it was for the purpose of permitting defendant Flippin to work out collections on the paper, but that he, plaintiff, was looking to him, Flippin, for liability on the former contract. Such was consistent with the surety's right of subrogation and was within the provisions of the latter contract.

The last contention is that the contract sued upon is in contravention of public policy, and so void. This under the theory that a director of a corporation occupies a high fiduciary relation and will not be permitted to contract concerning his duties. Counsel cite authorities supporting this gen-

eral statement as applied to particular facts. Huber v. Culp, 46 Okla. 570, 149 Pac. 216; Inland Compress Co. v. Simmons, 59 Okla. 287, 159 Pac. 262; Bentley v. Zelma Oil Co., 76 Okla. 116, 184 Pac. 131; McKee v. O. & G. Co., 77 Okla. 260, 188 Pac. 109. And we observe the citation from Elliot on Contracts, vol. 2, p. 59: "A bond which indemnifies a public official from loss for breach of duty is void as against public policy and no recovery can be had thereon." And we notice the application to officers of a corporation where such officers or directors by contract with another assume obligations inconsistent with the duties of their office as exemplified in the sale of a directorship (Noel v. Drake, 28 Kan. 265, 42 Am. Rep. 162), and for continuance in office of such corporation (Timme v. Kapmier, 162 Wis. 571, 156 N. W. 961).

We agree with these authorities, but, after all, we find the rule in Owens v. Henderson (Ky.) 215 S. W. 90, that only those contracts are against public policy which tend clearly to injure public health, morals, or confidence in the administration of law, or to undermine security of individual rights, whether of personal liability or private property.

None of these objections are applicable to the situation under consideration. The liability, if any, was incurred in the past and at the time of the merger. The contract did not concern acts in the future; therefore, it did not control official discretion. When contracting the parties must have known that liability existed and that loss was impending and would be sustained unless the loans were liquidated, and that they could only be liquidated by being paid or renewed. The contract did not contemplate that the plaintiff, as director of the bank, would do or forbear any act to undermine securities of the institution. The excessive loans were not acquired as a result of such contract, for it was not in existence on January 1, 1922, three months prior to when the securities were secured, and then both plaintiff and defendant Flippin were directors in the bank. So long as plaintiff retained his stock and continued as a director he would have a voice in the liquidation of the excessive loans, not yet declared a loss and not yet separated from the bank assets by the Comptroller of the Currency. So situated, his personal loss to come would be minimized by personal supervision, but by sale of his stock he would lose his directorship and consequently personal supervision in liquidation of the excessive loans. The consideration for the purchase of plaintiff's stock must have been cash and the indemnity contract. The indemnity contract is in plain, unambiguous language; its purpose and intent is clear. There is nothing in the contract, or in the effect of it, that appeals to us as being inimical to the rights of the bank, stockholders, or creditors thereof.

There was the sale of stock; excessive loans had previously been made within the knowledge of the contracting parties, which created a personal liability. It was problematical whether the loans would be recouped before the securities thereby represented were forced to be segregated and collected from the directors assenting to them. The purchaser of the stock as a part consideration indemnified the seller against loss. It ultimately developed there was a loss. The seller of the stock has paid his liability and recognized his original wrongful act. We cannot say the contract was against public policy.

Section 5173, C. O. S. 1921, provides:

"An agreement to indemnify a person against an act already done is valid, even though the act was known to be wrongful, unless it was a felony."

The acquiring of excessive loans is not a felony nor criminal offense. Here the illegal act was not the cause for the contract and was entirely disconnected from it, although the occasion for entering into the contract arose ou of the existence of the illegal act. The contract under such facts is valid. 31 C. J. 426.

The rule with respect to such contracts is as follows:

"Where an unlawful act has been done, a subsequent independent contract in reference thereto, founded on a new consideration, is not avoided by the prior illegal act." Ocean Ins. Co. v. Polleys, 13 Pet. 157; McBlair v. Gibbs, 17 How. 232; Tenant v. Elliott, 1 Bos. & P. 3; Armstrong v. Toler, 11 Wheat. 258, 6 L. Ed. 468; Hall v. Huntoon, 17 Vt. 244, 44 Am. Dec. 332.

"A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties." Section 5046, C. O. S. 1921, Campbell v. House, 74 Okla. 35, 176 Pac. 913.

In Horn v. Gibson, 24 Okla. 481, 103 Pac. 563, this court held:

"A party seeking to avoid a contract on the ground that the consideration was malum prohibitum, or against public policy, assumes the burden, and in order to prevail must sustain the same by a preponderance of the proof." Hughes v. Snell, 28 Okla. 828, 115 Pac. 1105.

We observe nothing contained in the contract that would tend to injure public health, public morals, or public confidence, neither is the same destructive of individual rights, but in keeping with them and in a manner authorized by law.

We, therefore, reverse the judgment of the trial court in sustaining a demurrer to plaintiff's evidence and rendering judgment for defendant, and remand the cause for further proceeding consistent with the views herein expressed.

BRANSON, C. J, MASON, V. C. J., and HARRISON, LESTER, HUNT, and HEFNER, JJ., concur.