## JANEWAY v. SECURITY & TRUST CO. OF PONCA CITY, OKLA.

No. 26112.   May 26, 1936.

Rehearing Denied June 16, 1936.

Application for Leave to File Second Petition for Rehearing Denied June 30, 1936.

Charles Hill Johns and Harold Thweatt, for plaintiff in error.

Maris & Maris, for defendant in error.

PER CURIAM. Plaintiff in error, defendant below, prosecutes this appeal from the judgment of the trial court, rendered upon a contract of guaranty. The defendant in error, Security Bank & Trust Company of Ponca City, Okla., a corporation, instituted its action to recover against the plaintiff in error and one other upon the contract of guaranty, which reads:

"Western Service Corporation
"6th Floor Braniff Bldg.
"September 30, 1931

"Mr. L. K. Meek, President
"Security Bank and Trust Company
"Ponca City, Oklahoma

"Dear Mr. Meek:
"Western Service Corporation has this

day purchased from the Ponca Salvage Iron and Metal Company the following described pipe:

2,000' of 10-3/4", 40 lbs. per ft. at .80 per ft. _____$1,600.00
5,000' of 8-5/8", 28 lbs. per ft. at .60 per ft. _____ 3,000.00
5,000' of 4-1/2", 11 lbs. per ft. at .25 per ft. _____ 1,250.00
10,000' of 2", 3-7/10 lbs. per ft. at .10 per ft. _____ 1,000.00

Total_____$6,850.00

"This bill is payable one hundred and twenty days after the last delivery of the above pipe.

"In conformity with our conversation over the telephone this day, we, the undersigned, Earl R. Ernsberger and P. A. Janeway, hereby guarantee the payment of the above bill at maturity, which is one hundred and twenty days from the last delivery date of the above listed pipe.

"Very truly yours,
"(Signed) Earl R. Ernsberger
"(Signed) P. A. Janeway."
"PAJ/gh

The facts are substantially as follows, and no serious dispute exists with respect to any material fact.

Ernsberger and Janeway, who executed such contract of guaranty, were officers of the Western Service Corporation, the purchaser of the property described in the contract of guaranty, from the Ponca Salvage Iron & Metal Company. Said property was, at the time of the execution of such guaranty, covered by a chattel mortgage held by the defendant in error to secure a sum in excess of the purchase price of such property. As a result of the letter of guaranty, the defendant in error consented that the sale of said property might be made to the Western Service Corporation, and the transaction was thereupon completed and the property delivered. The purchase price was not paid, either by the Western Service Corporation or by the guarantors, and this action is to recover upon the contract of guaranty.

It is admitted that the defendant in error is also the assignee of the Ponca Salvage Iron & Metal Company of its claims against the Western Service Corporation for the purchase price of the property described in the letter of guaranty; that such purchase price has not been paid, nor has the contract of guaranty been performed. The evidence is not contradicted that the chattel mortgagee consented to the sale of the property described in the contract of guaranty by the mortgagor upon condition that the payment of the purchase price be guaranteed to the mortgagee; that the consent of the mortgagee to said sale was procured by such letter of guaranty.

The trial court upon these facts entered its judgment against the plaintiff in error for the value of the property released by the mortgagee as set out in the letter of guaranty, which was found by the court to be $4,218.81.

1. The plaintiff in error seeks to set aside this judgment upon the ground that there had been no default on the part of the guarantor because the mortgagor had not defaulted in the payment of the mortgage indebtedness to the mortgagee, plaintiff in error's position being that the contract of guaranty was for the payment of the mortgage debt to the defendant in error rather than for the payment of the purchase price of the property released from the chattel mortgage on the strength of the contract of guaranty. This position is not tenable, nor are the cases cited by the plaintiff in error to sustain this position in point.

This contract of guaranty is clearly one for the payment of the purchase price of the articles sold by the mortgagor with the consent of the mortgagee, and requires the payment of the purchase price of such property by the guarantors 120 days after the last delivery of the pipe if not then paid by the purchaser.

The rule with respect to the construction of contracts of guaranty was clearly stated in the case of Lamm & Company v. Colcord, 22 Okla. 493, 98 P. 355. In that case this court said:

"In construing the language of an instrument of guaranty for the purpose of interpreting the same to determine the intention of the parties, it should be taken most strongly against the guarantor, and in favor of the party parting with his property upon the faith of the interpretation of such instrument most favorable to his rights."

2. Such a contract, entered into at the time of the sale, is based upon a sufficient consideration, to wit, the consent of the mortgagee to the sale of the mortgaged property upon credit in consideration of the guarantee to the mortgagee of payment of the amount of the purchase price within 120 days after the last delivery of the pipe.

Plaintiff in error's next proposition is also erroneous, in that it is based upon the assumption that any part of the mortgage debt paid by the mortgagor to the mortgagee would serve to reduce, pro tanto, the

liability of the guarantor, again proceeding upon an erroneous assumption that the obligation of the guarantor was to pay a part of the mortgage debt, when in fact the obligation of the guarantor was to pay the purchase price of the property sold within 120 days after the last delivery of pipe if the purchaser did not do so. The authorities cited by plaintiff in error do not sustain his contention, but such authorities do sustain the proposition that if the purchaser of the mortgaged property had paid to the mortgagee, or had paid to the mortgagor, any part of the purchase price, that such payment would serve to reduce, pro tanto, the liability of the guarantor; but, as heretobefore stated, no payment of any part of the purchase price has ever been made. Consequently, no right of reduction exists.

3. The plaintiff in error further asserts that the judgment of the trial court is erroneous in that the court did not include in its judgment the right of the plaintiff in error to be subrogated, upon payment of the principal debt, to the defendant in error's rights under the mortgage it held against the property of the mortgagor. The statement of the proposition furnishes its own answer. The right of subrogation plaintiff in error has is not with respect to the payment of the mortgage debt of the mortgagor to the defendant in error, but is with respect to the payment to the defendant in error of the purchase price of the property sold by the mortgagor to the Western Service Corporation. As heretofore stated, no part of such purchase price has ever been paid—not by the Western Service Corporation, the purchaser of such property, nor by the plaintiff in error, the guarantor of such purchase price. The court finds no fault with the authorities cited in support of this proposition, but such authorities do not sustain the plaintiff in error's position that he is entitled to subrogation as against the defendant in error or as against the mortgagor who made sale of the mortgaged property with the consent of the defendant in error, but do sustain the proposition that such right of subrogation only exists with respect to any claims that the mortgagee or the mortgagor might have as against the purchaser of the property to the extent of the payment that may be made by the guarantor under his contract of guaranty. The trial court granted to the plaintiff in error this right of subrogation. Such right is sustained by the decisions of this court. Stevens v. First National Bank of Muskogee, 117 Okla. 148, 245 P. 567; Anderson v. Reed, 133 Okla. 23, 270 P. 854. In the latter case, the rule was announced as follows with respect to similar rights of a surety:

"The surety is entitled to be subrogated to all the rights the creditor held against the debtor for such part of the indebtedness as the surety pays and satisfies pursuant to the contract of suretyship."

4. It is finally contended that the trial court approved a special finding which would in effect sustain plaintiff in error's contention that the contract of guaranty was for the payment of the mortgage indebtedness owing to the defendant in error by the mortgagor. The trial court indorsed upon a finding of fact before the entering of his general finding of fact, an approval. The finding of fact approved by the trial court, referred to as No. 10, was as follows:

"The court finds that the letter of guarantee, dated September 30, 1931, executed and delivered by defendants, Ernsberger and Janeway, to plaintiff bank, was a special letter of guarantee directed to, and in favor of plaintiff bank, and the plaintiff bank only; further that by said letter of guarantee, defendants, Ernsberger and Janeway, became sureties to said plaintiff bank for the principal Ponca Salvage Metal & Iron Company and/or Joe Goldenstern to the limited extent of the value of such merchandise delivered and furnished Western Service Corporation under the terms and conditions of said letter of guarantee, dated September 30, 1931."

The approval of this finding of fact submitted by the plaintiff in error to the trial court was prior to the court's final determination of the facts. In the court's general findings he found the facts to be as follows:

"In this case Mr. Janeway and his codefendant both signed a guaranty in writing, and that is the basis of this suit. While it is not disputed that the debt has never been paid, and that Mr. Janeway and his codefendant, Ernsberger, signed the guaranty, and that the bank on the faith of the guaranty, released the mortgage. Now, the bank never released this mortgage until the very date of the guaranty. The date it was signed. * * * I do hold Mr. Janeway to his contract signed by him, and I hold that the sale was not completed until he signed the contract, and that the bank released its mortgage holding the title up to that time upon the faith of the written guaranty, that then and on that date the sale was completed and they are bound, that is, on the date of September 30, 1931."

The trial court in its final determination of the facts as contained in the journal entry of judgment also made the following findings:

"The court further finds: That said guaranty was executed by the defendant, P. A. Janeway, as required by the plaintiff, and as a condition precedent for the release by plaintiff of its chattel mortgage on said materials, and, as consideration therefor, said pipe was released from said mortgage; and that said pipe was subsequently actually sold and delivered to the Western Service Corporation; and that said Western Service Corporation used the same in its Shawnee system; and that said letter of guaranty was prepared by the defendant, P. A. Janeway. * * *

"The court further finds: That the purchase order of September 18, 1931, did not become a final and complete contract until September 30, 1931.

"The court further finds: That there is due from the defendant, P. A. Janeway, to the plaintiff, the sum of $4,218.81, with interest thereon at the rate of six per cent. (6%) per annum from January 30, 1932, until paid.

"The court further finds: That no binding contract between J. Goldenstern, doing business under the trade-name of Ponca Salvage Iron & Metal Company, and the Western Service Corporation, was made on the material in question until September 30, 1931; and that the letter of guaranty executed on that date was the contract, payment for which was guaranteed."

These findings by the trial court are clearly in harmony with the admitted facts and give a fair construction of the purpose and object of the contract of guaranty. Finding No. 10, while out of harmony with the subsequent findings of the court, is not supported by the facts. The rule is well sustained by the authorities that a trial court may amend, correct, modify, or otherwise change its findings and conclusions before entry of judgment, and this seems to have been done by the trial court in this case. 64 C. J. 1264.

It follows that where the trial court in a jury-waived case finds the facts, which findings are clearly in harmony with the evidence and admitted facts, the judgment will not be reversed because the court approved a special finding out of harmony with the findings of fact upon which the judgment of the court is made to rest.

The rule is that where the trial court has reached a proper final judgment of the case, it is not material that such judgment is predicated upon erroneous findings of fact or a misinterpretation of the law. Kibby v. Binion, 70 Okla. 96, 172 P. 1091.

And this court is not bound by the trial court's opinion as to the effect of the facts found or by its reasoning in reaching its conclusions of law, but will affirm the trial court's final judgment irrespective of erroneous reasoning where the correct result is reached. Board of Equalization v. First State Bank, 77 Okla. 291, 188 P. 115.

It therefore follows that there is no error in this record, and the judgment is affirmed.

It further appears that plaintiff in error superseded the judgment of the court below by a supersedeas bond upon which plaintiff in error, P. A. Janeway, was principal obligor, and H. L. Berry and W. N. Hayes were sureties. Judgment is herein rendered upon such supersedeas bond against H. L. Berry and W. N. Hayes for the amount of the judgment affirmed and for costs. It is so ordered.

The Supreme Court acknowledges the aid of Attorneys Paul B. Mason, Hugh Webster, and H. M. Gray in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Mason and approved by Mr. Webster and Mr. Gray, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

RILEY, WELCH, PHELPS, CORN, and GIBSON, JJ., concur.