## KING et al, v. TURNER.

No. 15000—Opinion Filed March 17, 1925.

### 1. Reformation of Instruments—Mutual Mistake.

When, through mutual mistake or inadvertence of the parties. a written instrument omits or fails to set out the full and true agreement of the parties, the same will be reformed and corrected to set out their true agreement and to conform to their real intent.

### 2. Contracts—Reasonable Interpretation.

A contract should be so interpreted as to not only make it lawful, but to make it reasonable, definite, and capable of being carried into effect, if it can be done without violating the intention of the parties.

### 3. Same—Ascertainment of Intent.

To determine the intention of the parties in making a contract, the court should place itself, as far as possible, in the position of the parties when the contract was made.

### 4. Reformation of Instruments — Mutual Mistake—Proof.

To justify a reformation of the contract, the proof must be clear and convincing, to the extent of proving to a moral certainty. but not beyond the possibility of controversy, that a mistake occurred in reducing the agreement to writing and that the mistake was mutual or common to both parties.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Creek County: Fred A Speakman, Judge.

Action by Thomas E. Turner against Thomas M. King et al. Judgment for plaintiff, and defendants bring error. Affirmed.

Chas. B. Rogers, for plaintiffs in error.

V. H. Albertson and T. L. Blakemore, for defendant in error.

Opinion by JARMAN, C. The amended petition of the plaintiff, Thomas E. Turner, on which this action was tried, alleges that the King Petroleum Company, one of the defendants, is a trust estate, and that Thomas M. King, P. J. King, and W. T, Moran, defendants, are the trustees therefor, with the full right, power, and authority in each of them to act for and to bind the King Petroleum Company by contract; that the defendants were the owners of an oil and gas mining leasehold estate upon certain lands and premises in Creek county, and on March 15, 1921, Thomas M. King, acting for the trust and his cotrustees, made and entered into a contract with the plaintiff whereby it was agreed that the plaintiff should drill a well for oil and gas on said lease through the Mounds or Wilcox sand unless oil or gas should be found in paying quantities at a lesser depth on the location agreed upon by the parties to said contract; plaintiff to furnish the rig, casing, and all other necessary equipment and to pay all expenses of drilling and completing the well, and to begin said well within 60 days from the date of the contract and the drilling thereof to be prosecuted with due diligence to completion, unavoidable delays excepted; and that it was further agreed and understood by and between the parties that, in the event a producing well should be drilled, the defendants would assign and set over to the plaintiff an undivided one-half interest in and to the oil and gas mining lease and leasehold estate except two gas wells then in existence on the premises, and that it was further agreed that in the event said well, when drilled by the plaintiff, should produce oil or gas in paying quantities that each of the parties to said contract should pay one-half of the expenses of equipping said well for producing oil or gas and of operating the same, and that the said parties should pay equally the expenses of drilling, equipping, and operating such other wells as they should agree to drill on said lease; that an attempt was made to reduce said contract to writing, but, by mutual mistake and inadvertence of the parties in preparing and attempting to reduce to writing said contract, the same was drafted in such a manner as to not fully and correctly express the full agreement and understanding of the parties to said contract as shown by the language used therein as follows:

"In consideration of which, the party of the first part hereby agrees to assign and set over to the said second party a full and undivided one-half interest in and to

the said well, in the event the same is found to be a paying producing oil or gas well. It is further agreed that if said well is a paying producer, as hereinbefore specified, that each of the parties hereto shall own an equal one-half interest in the said well, and that each party hereto shall receive an equal one-half of the proceeds received from said well.

"It is further agreed that in the event the said well is a paying producer, that each of the parties hereto shall pay an equal one-half of all expenses of drilling, completing and operating all such other wells as the parties hereto may mutually agree to drill on the above described tract."

The plaintiff alleges, further, that said contract should have been worded so as to give the plaintiff an undivided one-half interest in and to the lease instead of the well; that said contract, as written, is ambiguous, and that the same should be reformed to recite the true agreement entered into between the parties. The plaintiff alleges, further, that he had fully performed his part of said agreement and had drilled a producing oil well on the premises and prayed for an order requiring the defendants to execute an assignment to him of an undivided one-half interest in and to the lease and leasehold estate.

To this amended petition, the defendants filed an answer denying that the contract in question is ambiguous and alleging that the agreement of the parties was fully and correctly set out by the terms of the said contract, and that there was no mutual mistake on the part of the parties to said contract in the execution of the same, and tendered to the plaintiff an assignment of an undivided one-half interest in and to the said well.

The plaintiff filed a reply alleging that the term "to drill and complete a well," as used in the contract, has a technical meaning when applied to the drilling and completing of wells for oil and gas and that said term was used by the parties in said contract in its technical sense, which means that the well shall be drilled to the depth indicated and sufficient casing shall be used to shut out the water, and does not include the shooting of the well, cleaning it out after the shot, attaching the same to the pump, or equipping it for operation.

The court entered judgment reforming said contract to give the plaintiff an undivided one-half interest in and to the lease and leasehold estate and directing the defendants to execute an assignment thereof to the plaintiff.

The defendants, contend: (1) That the contract sought to be reformed is clear, unambiguous and free from any unusual language; (2) that, to reform said contract, the burden of proof was upon the plaintiff to show clearly and to a moral certainty that there was a mutual mistake on the part of both parties to the contract in drafting the same and that the term "one-half interest in the well" was intended by both parties to be "one-half interest in the lease"; (3) that the court erred in admitting the testimony of certain witnesses to the effect that the drilling of the well for a one-half interest in said well was unreasonable and that said testimony was not within the issues.

We cannot agree with counsel for defendants that said contract is clear and explicit. Under the contract, as written, which provides that the plaintiff should receive an undivided one-half interest in and to "said well," the second paragraph of the contract, as above set out, is meaningless, for the effect thereof would be that in the event the well, which was to be drilled, should turn out to be a producing oil or gas well, then if the defendants should decide to let the plaintiff do further drilling on the lease, that the plaintiff should have an undivided one-half interest in such well or wells as the plaintiff and the defendants might mutually agree to drill. In other words, this paragraph of the contract, as far as the plaintiff is concerned, means nothing to him, and, to that extent, the contract in question is ambiguous, and, therefore, it was necessary for the trial court to consider extraneous evidence to ascertain the true agreement and understanding of the parties. It is the duty of the court to give any contract such an interpretation as will make it not only lawful but reasonable in its terms and capable of being carried into effect, if it can be done without violating the intention of the parties. Section 5046, Comp. Stat. 1921. The burden of proof was on the plaintiff to show clearly that there was a mistake on the part of both the plaintiff and the defendant in the drafting of the contract and in their signing the same, and that it was intended that the plaintiff should have an undivided one-half interest in the lease instead of the well. Upon the substitution of the word "lease" for the word "well" in the contract, the second paragraph, now ambiguous under the terms of the contract as written, would become clear and explicit.

The defendants take the position that the plaintiff has failed in that degree of proof

required to justify the court in reforming the contract, and it is intimated that said contract cannot be reformed because one of the parties has testified that there was no mutual mistake. In other words, the effect of this contention is that both parties would have to testify there was a mutual mistake before the contract could be reformed, and if a case of that character were ever presented there would be no necessity of resorting to the courts to reform a contract, as both parties would agree that there was a mistake. The language of the contract itself shows that the plaintiff had a further interest in the lease than the one well in question. This well was begun by the plaintiff in May, 1921, and the Wilcox or Mounds sand was reached on July 17, 1921, and on that date the plaintiff wired the defendant Thomas M. King at Louisville, Ky., that the sand had been reached and asked him to come out so further arrangements could be made for the bringing in of the well. On the next day, July 18th, the plaintiff wired Mr. King that he had brought in a small well and asked him to come out so steps could be taken to shoot the well. On July 21st, the plaintiff again wired Mr. King to come out so the well could be taken care of and final arrangements made for putting it on the pump, and, on August 15th, the plaintiff wired that he had shot the well and it was making a nice flow of oil and again asked that Mr. King come out. On August 20th, the defendant Thomas M. King wrote the plaintiff a letter in which he acknowledged receipt of the former telegrams and made the following request. "Kindly send us an estimate of the material and expense necessary to put this well to pumping, etc., and also outline any further plans which you might have in connection with the lease and whether or not you think it advisable to drill in more wells on this lease." This language clearly implies that the defendant recognized the fact that the plaintiff had a further interest in this lease than the one well which had been drilled. The defendant placed his own construction upon this contract, recognizing the plaintiff to have a further interest in the lease, and such contention should be adopted by and should control the court. Knebel v. Rennie, 87 Okla. 136, 209 Pac. 414. The plaintiff clearly met the burden of proof required of him to procure a reformation of the contract.

In order for the court to properly arrive at the true agreement of the parties, it was its duty to place itself, as far as possible, in the position of the parties when the contract was entered into. Withington v. Gypsy Oil Co., 68 Okla. 138, 172 Pac. 634. The court, recognizing this rule, permitted witnesses to testify as to the conditions surrounding the lease at and prior to the time of the making of the contract in question.

The evidence discloses that the plaintiff had drilled a well immediately to the east and on land adjoining the lease here involved to the Wilcox sand and that the same was a dry hole; that there was no oil development in that immediate vicinity, and experienced oil men, acquainted with that territory and the surrounding conditions, testified that the cost of drilling the well in question was worth more than an undivided one-half interest in the entire lease at the time of the making of said contract. The defendant contends that all of this evidence was inadmissible and was not within the issues, but we think the same was properly admitted for the purpose of showing the conditions obtaining and what was likely in the minds of the parties at the time of the making of the contract in question. The judgment of the trial court was proper and we find no prejudicial error in the record.

The judgment of the trial court is affirmed.

By the Court: It is so ordered.

Note.—See nuder (1) 34 Cyc. p. 907. (2) 13 C. J. p. 539, §506; p. 540, §511. (3) 13 C. J. p. 542, §514. (4) 34 Cyc. p. 984.