## CHICAGO, R. I. & P. Ry. CO. v. BASEY et al.

No. 16470—Opinion Filed April 6, 1926.

Rehearing Denied May 25, 1926.

**1. Contracts—Construction—How Intention of Parties Ascertained.**

The meaning and intention of the parties as expressed by a written contract are to be gathered from the contract, the nature of the subject-matter contracted about, the situation of the parties, and conduct of the parties in relation to the contract.

**2. Carriers—Nonliability of Carrier for Loss of Freight in Transit in Possession of Plaintiff's Associate.**

Record examined; held, to be insufficient to support judgment for the plaintiff.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Oklahoma County; Wm. H. Zwick, Judge.

Action by Wm. Basey Company against the Chicago, Rock Island & Pacific Railway Company, Eagle-Bock Products Sales Company, and R. L. Wharton, for loss of shipment of freight. Judgment for plaintiff, and defendant Chicago, Rock Island & Pacific Railway Company brings error. Reversed.

W. L. Bleakmore, W. F. Collins, John Barry, and A. T. Boys, for plaintiff in error.

Twyford & Smith, for defendants in error.

Opinion by STEPHENSON, C. Wm. Basey, doing business as Wm. Basey Company, commenced its action against the Chicago, Rock Island & Pacific Railway Company, the Ea-

gle-Bock Products Sales Company, and R. L. Wharton, for the loss of several cases of beverage carriers at Oklahoma City. The trial of the cause resulted in judgment for the plaintiff, and against all of the defendants. The railway company has appealed the cause, and assigns as error for reversal that the instructed verdict in favor of the plaintiff is against the law and the evidence.

The shipment moved from Okmulgee as a partial carload shipment of empty beverage carriers, by the plaintiff in error's line, as an intermediate carrier, to Oklahoma City. The bill of lading on which this shipment moved shows that the shipment was from Wm. Basey Company, and consigned to Wm. Basey Company at Milwaukee, Wis., with instructions to notify the Eagle-Bock Products Sales Company. The bill of lading further provided that the car was to stop at Oklahoma City to finish loading. The bill of lading was issued and delivered to the Wm. Basey Company, who attached a draft thereto, drawn on the Eagle-Bock Products Sales Company, through a bank at Oklahoma City. Notice of this action was not given to either of the carriers.

The car was stopped at Oklahoma City and placed at a warehouse on the Santa Fe tracks, at the request of a representative of the Eagle-Bock Products Sales Company, for the loading of the car to be completed. It was understood that the beverage carriers of the Eagle-Bock Products Sales Company would complete the loading of the car for its destination. The evidence discloses that R. L. Wharton, doing business as the Eagle-Bock Products Sales Company, advised Wm. Basey that he would accumulate sufficient beverage carriers, which his company owned at Oklahoma City, to complete the loading of the car. The car remained where it was placed for loading for sometime after the free time expired for completing the loading. Wm. Basey, of the Wm. Basey Company, made investigation as to the cause for the detention of the car, and on inspection of the car found that the beverage carriers had been taken from the car, presumably by R. L. Wharton of the Eagle-Bock Products Sales Company.

The Eagle-Bock Sales Company did not place any of its property into the car, as it was understood it would do. The partial carload shipment, which moved from Okmulgee to Oklahoma City, final destination, Milwaukee, did not move from Oklahoma City, with a shipment for either of the companies. The Wm. Basey Company contends that the Chicago, Rock Island & Pacific Railway Company violated the terms of the bill

of lading in placing the car for loading by the Eagle-Bock Products Sales Company at Oklahoma City. It is the contention of Wm. Basey that it was the duty of the carrier to require a surrender of the bill of lading before the car was placed at Oklahoma City to have the loading completed. The contract is in writing, and must govern the rights of the parties in relation to the shipment. The meaning and intention of the parties, as expressed by a contract in writing, must be gathered from the contract, the nature of the subject-matter contracted about, and the conduct of the parties in relation thereto. King v. Turner, 109 Okla. 77, 234 Pac. 564; Goble v. Bell Oil & Gas Co., 97 Okla. 261, 223 Pac. 371; First National Bank of Buffalo v. Ward, 91 Okla. 33, 215 Pac. 752.

It would appear from the contract, as Wm. Basey Company is designated as consignor and consignee, that this company owned the property. The provision of the contract, that the Eagle-Bock Products Sales Company should be notified on the arrival of the car at Milwaukee, indicates that the latter company was domiciled, or had a place of business, at final destination, and had some interest in the shipment: The contract so far would indicate that the property billed out of Okmulgee was the property of the Wm. Basey Company, and was to remain the property of the latter until the Eagle-Bock Products Sales Company made some subsequent arrangement with the consignee for the property to be delivered at Milwaukee to it. It is the usual practice under such terms as were embodied in the bill of lading, for the consignor to send the original bill of lading, with draft attached, drawn for the purchase price of the property, to a bank at final destination for collection. The consignor ordinarily advises the party on whom the draft is drawn that bill of lading attached to draft has been sent to his bank. The bill of lading, bearing proper indorsement of the consignor, goes to the bank with the draft, which is sufficient to clothe the drawee of the draft with full power and authority to receive the possession of the property when he takes up the bill of lading at the bank. But all this happens at final destination, unless agreed otherwise.

It is clear under the provisions of the bill of lading, that the railway, at destination, would not be authorized to deliver the property to Wm. Basey Company without having first notified the Eagle-Bock Products Sales Company. The latter was entitled to the notice for whatever purpose it was intended, either to take up the bill of lading, or make known to the railway company the nature of the interest it owned or claimed in the property. It is clear from the terms of the bill of lading, that the carrier at destination would not have been authorized to deliver the shipment to the Eagle-Bock Products Sales Company without surrender of the bill of lading, for the reason that the contract indicates that Wm. Basey Company was the owner of the property at the time of the shipment, and was to retain the title, at least, until the shipment reached final destination.

The bill of lading bore the following notation:

"Stop at Oklahoma City to finish loading Stop charge $6.30, in addition to rate."

The latter provision, in connection with the other provision referred to, would indicate that the purpose of stopping the car at Oklahoma City was to enable Wm. Basey Company to finish loading the car with its own property, as the property which moved to Oklahoma City in the car appeared to be that of Wm. Basey Company. As the purpose of stopping the car was to enable that company to finish loading the car with its own property, it would follow that Wm. Basey Company was the proper party to notify at Oklahoma City. It would appear that the Eagle-Bock Products Sales Company would not be concerned with the car stopping at Oklahoma City. It was proper to notify Wm. Basey Company of the arrival of the car, and permit this company, or its representative, to take charge of the car to complete loading, as it appeared to be the owner of the property already loaded and to be loaded.

The foregoing conclusions apply for the reason that the car is out of the custody and care of the railway while the loading is being completed, and the car should be delivered to the party, for such loading, who is the owner of the property already loaded and to be loaded, so that the latter may protect his property. The carrier would be authorized to deliver such car to any representative of the owner, on proper direction from the owner.

The car was placed at Oklahoma City for a representative of the Eagle-Bock Products Sales Company on the request of a representative of the latter company, without a showing of authority from the Wm. Basey Company. It was to be presumed that the bill of lading had already gone forward, with draft attached, to final destination, for the attention of the person who was to be notified of the final arrival of the shipment. The property that remained in the car, which was the property of Wm. Basey Company,

was removed from the car by a representative of the Eagle-Bock Products Sales Company. The owner has never been compensated for the loss. If the transaction ended at this stage of the proceedings, judgment ought to follow for the Wm. Basey Company.

Wm. Basey testified, in relation to this transaction, in the trial of the cause as follows:

"Q. When you billed these bottles from Okmulgee to Milwaukee, Wis., and requested they be stopped at Oklahoma City for part loading, what did you mean by that?

"A. Well, the car was not full, and Mr. Wharton claimed he had empty cases here and others coming from nearby points, whereby he could completely load the car at this point.

"Q. And you agreed with that arrangement?

"A. Yes, sir."

The testimony of the plaintiff throws additional light upon this transaction. It is clear from the testimony that it was the intention of the plaintiff to take in the Eagle-Bock Products Sales Company as a partner, or associate, in making up the carload shipment, which was proposed to be moved under the bill of lading to Milwaukee.

It appears from the testimony that it was intended that Mr. Wharton was to load the car at Oklahoma City with the property of the Eagle-Bock Products Sales Company. It would appear that the car was delivered to the person intended by the Wm. Basey Company for loading, to be completed at Oklahoma City. Under the bill of lading the property of the Eagle-Bock Products Sales Company would have moved along with plaintiff's property to Milwaukee, Wis. At the latter point, the Eagle-Bock Products Sales Company could have replevied its property, which it loaded in the car 'at Oklahoma City, from the carrier, upon the payment of charges, without the surrender of the bill of lading. The testimony of the plaintiff varies the written contract, from showing it to be the owner of the carload shipment to that of showing the carload shipment to be a joint partnership between itself and the Eagle-Bock Products Sales Company. The carrier did not object to this testimony, and the plaintiff is bound by its contract and its testimony. Either party was entitled to enter the car, and neither could exclude the other. Each was liable to the other for damages for taking or injuring the other's property. Instead of being the single enterprise of the plaintiff, it develops to be a joint enterprise, between the

plaintiff and the Eagle-Bock Products Sales Company, who was let into the possession of the car at Oklahoma City.

If the property loaded and to be loaded had been the property of the plaintiff, moving on the bill of lading in this case, the delivery of the car to Mr. Wharton for loading, and the loss of the property during such time, would have rendered the carrier liable.

The damages suffered by the plaintiff in this case are the result of a breach of good faith on the part of its associate in the transaction. The carrier is not liable for damages or loss from a car while the car is stopped in transit, and in the possession of a part owner, and being loaded by the part owner of the property, pursuant to an understanding with the other associate.

The judgment is reversed.

By the Court: It is so ordered.

Note.—See under (1) 13 C. J. p. 524 § 485; pp. 542, 543 § 514; p. 546 § 517; 6 R. C. L. p. 837; 2 R. C. L. Supp. p. 219; 5 R. C. L. Supp. p. 372. (2) 10 C. J. p. 92 § 100 (Anno).