ELECTRICAL RESEARCH PRODUCTS, Inc., v. HOME AMUSEMENT CO., Inc.

Nos. 4527, 4613.

District Court, W. D. Oklahoma.

Feb. 15, 1934.

M. M. Thomas, of Oklahoma City, Okl., for plaintiff.

Stanard & Carey, of Shawnee, Okl., and Blakeney & Ambrister, of Oklahoma City, Okl., for defendant.

VAUGHT, District Judge.

In No. 4527 the plaintiff, a New York corporation, brings this action as a replevin action against the defendant, an Oklahoma corporation, alleging that it is the owner of, and entitled to the immediate possession of, certain goods, chattels, and mechanical devices, to wit, a certain electrical sound projector and reproducing equipment known as type 2—S equipment of the value of $6,600; that the plaintiff is the owner of said property, is entitled to immediate possession thereof, and that the defendant, although due demand has been made, refuses to deliver said property to plaintiff.

In No. 4613 the plaintiff alleges that it is a New York corporation, that the defendant is an Oklahoma corporation, that the amount in controversy exceeds $3,000, and for its first cause of action alleges that on the 30th day of November, 1928, the plaintiff and defendant entered into a written contract wherein it was agreed that the plaintiff was to install in the Savoy Theatre at Shawnee, Okl., a certain sound reproducing device which was the property of the plaintiff, said device being described as: "Type 2—S equipment designed for use with two (2) simplex, powers or motiograph projectors for disc and film reproduction."

The contract referred to is set out as an exhibit to said petition, and among other things provides, first, a grant of license and installation of equipment; second, for the use of equipment, for the removal to another theater, and instruction and inspection service. Under paragraph 5, it provides for installation charge as follows: "The Exhibitor agrees to pay to Products in New York Exchange an initial charge of Twenty-Six Hundred Twenty-Five ($2,625.00) Dollars less 10% quantity discount ($262.50) payable as follows: The sum of Ten Hundred Fifty ($1,050.00) Dollars less 10% quantity discount ($105.00) on or before the execution of this instrument, receipt of which is hereby acknowledged, and the balance, namely, Fifteen Hundred Seventy-Five ($1,575.00) Dollars less 10% quantity discount ($157.50) by a demand promissory note satisfactory to Products in the amount last mentioned, made by the Exhibitor and delivered to Products on or before the execution of this agreement and bearing no interest prior to presentation, which demand note Products agrees not to present for payment prior to the date on which the installation of the Equipment is completed and the Equipment made available to the Exhibitor as ready for public exhibition."

Paragraph 6 provides for a weekly payment during the life of the contract, as follows: "In addition to any other payments required to be made by the Exhibitor hereunder, the Exhibitor agrees to pay to Products throughout the term of the license hereby granted, a weekly payment which, for the first two weeks of said term, shall be payable on the Saturday next succeeding the day upon which the installation shall have been completed and the Equipment made available to the Exhibitor as ready for use, and thereafter throughout the balance of said term on each and every Saturday in advance. The amount of such payment shall be One Hundred Sixteen and 05/100 Dollars ($116.05) less 10% quantity discount ($11.60) per week for the first two years (104 weeks), and thereafter for the balance of the term of said license such weekly payment shall be in accordance with

Products' then current schedule of weekly payments for similar licenses, but not exceeding one-fourth of the weekly payment hereinabove agreed upon to be paid for the first two years."

The contract also provides for transportation charges, payment for parts, etc., and changes in theater. Paragraph 10 provides as follows: "Title to and ownership of all equipment at any time furnished hereunder and also all tools of all kinds, drawings, prints and written descriptions and instructions, remains vested in Products" (the plaintiff herein).

The contract further provides that the defendant shall pay all taxes, provides for access to equipment, liability for interruptions, injuries, etc., and paragraph 14 provides for events of default, which paragraph is here set out as follows:

"This agreement and the license hereby granted shall, at the option of Products, terminate and come to an end upon the happening of any of the following events, hereby designated to be events of default, to wit:

"(a) Upon the bankruptcy or insolvency of the Exhibitor or the assignment of any of its assets for the benefit of creditors.

"(b) Upon the failure or refusal of the Exhibitor for any reason to pay any of the items or sums herein agreed to be paid by it, including the payment of the note provided for in Section 5 hereof, within five days after such item or sum is or may become due, and as to this provision time shall be of the essence.

"(c) Upon the Exhibitor's ceasing to own or operate the Theatre, unless the Exhibitor shall previous to its ceasing to own or operate the Theatre have notified Products in writing of the date it will cease to own or operate the Theatre and shall have made provision, satisfactory to Products, for the care and custody of the Equipment or for the assumption of this agreement by the successor operator of the Theatre.

"(d) Upon a breach by the Exhibitor of any of the covenants herein contained relative to the use or maintenance of the Equipment, continued for more than fourteen (14) days after notice thereof by registered mail from Products.

"(e) Upon the removal of the Equipment or any part thereof without the consent of Products from the location and position in which it was installed by Products.

"(f) Upon the failure of the Exhibitor to accept delivery of the Equipment from the transportation company or common carrier, or to facilitate the work of Products in installing the Equipment. In the event of a default under any of the provisions of this section at any time during the first two years of the term of this license, the entire balance of weekly payments for the first two years shall be due and payable forthwith at the option of Products and whether or not it terminates this license or removes the Equipment as hereinafter provided. The license hereby granted and all obligations imposed upon Products by virtue of this agreement shall be suspended during the continuance of any event of default."

Paragraph 15 provides for the repossession of equipment, and is set out as follows: "Upon termination or expiration of this license by lapse of time or otherwise, the Exhibitor will surrender up and deliver possession of the Equipment to Products in good order and condition, reasonable wear and tear and obsolescence due to proper use thereof in the manner and place and for the purpose set forth in this agreement only excepted, and Products may repossess the Equipment and may, for the purpose of reducing the same to possession, enter the Theatre or any other premises where said Equipment may be and without any legal proceedings whatever possess and remove said Equipment, and the Exhibitor agrees to cooperate in such removal. If this license shall be terminated by default, or if the Exhibitor permits any of the events of default, hereinbefore enumerated, to occur, whether or not Products shall exercise the option to terminate this agreement, Products shall thereupon have the right without notice to take immediate possession of said Equipment, or any part thereof, and for that purpose may pursue the same wherever it or any part thereof may be found and may enter, with the aid and assistance of any person or persons, the Theatre or other premises of the Exhibitor and such place or places whatsoever, whether belonging to the Exhibitor or not in which the Equipment or any part thereof may be placed, and may take and seize the same to its own proper use forever, free from any right of the Exhibitor under this agreement. Products shall also have the right in like manner to enter the said premises and remove the Equipment in the event of the said premises being destroyed or damaged by fire or otherwise, to an extent which, in the opinion of Products, endangers the Equipment. The Exhibitor expressly covenants that in any such event no claim will be made for damage on account of such removal or otherwise, and the Exhibitor further agrees that

it will hold and save harmless Products from and against any and all claims for damages by any parties whatsoever on account of such removal."

The petition further alleges that, after said contract had been entered into, the equipment completely installed, and the payment of the installation charge, the defendant continued to use said equipment up to and including the 9th day of May, 1931; that after the 17th day of May, 1930, the weekly installments due to the plaintiff from the defendant were reduced to the sum of $94.70 per week, which weekly installment was due and payable on Saturday of each week thereafter.

The petition further alleges that the defendant has violated the terms of said written agreement, in that on the 14th day of October, 1930, there became due and owing to the plaintiff from the defendant on said written contract the sum of $94.70; that no part of said sum has been paid to the plaintiff, although due demand has been made for the payment thereof; that thereafter, and upon Saturday of each successive week from the 4th day of October, 1930, up to and including the 9th day of May, 1931, there became due and owing to the plaintiff from the defendant an installment of $94.70 for each week, and that none of said weekly installments and payments due from the defendant has been paid, although demand has been made for the payment of same, and that there was due on said payments and installments in the sum of $94.70 for 32 weeks, all in the total sum of $3,030.40. The petition further alleges that on the 16th day of May, 1931, the plaintiff reduced said weekly installments to the sum of $20 per week; that the defendant has failed and refused to pay any of said weekly installments becoming due and payable on Saturday of each week from May 16, 1931, to June 13, 1931, or a total of $100, which the defendant has failed and refused to pay, although due demand has been made therefor.

The petition further alleges that during the month of October, 1930, the plaintiff furnished at the request of the defendant merchandise in the total sum of $6.70, and that defendant has failed and refused to pay said sum, and that there now remains due and owing to the plaintiff from the defendant the sum of $3,137.10 as above set out, together with interest on $3,030.40 at 6 per cent. from the 9th day of May, 1931, interest on $100 at 6 per cent. from the 13th day of June, 1931, until paid, and interest on the sum of $6.70 at 6 per cent. from the 6th day of October, 1930, until paid.

The second cause of action alleges that, as a part payment of accounts and installments due prior to September 4, 1930, the defendant executed a promissory note in favor of the plaintiff in the sum of $243.95, which the defendant has failed and refused to pay, although due demand has been made therefor, and that the defendant, therefore, is indebted to the plaintiff the sum of $243.95, together with interest at 6 per cent. from September 4, 1930, until paid, and plaintiff asks judgment against the defendant on the several counts for a total sum of $3,381.05, together with interest thereon at 6 per cent. as hereinbefore set out.

The defendant in its answer denies generally the allegations of the plaintiff's petition, except the installation of the equipment and its use by the defendant, and by way of cross-petition alleges that the equipment described in plaintiff's petition was leased by the defendant for a period of 10 years; that the total payments to be made by the defendant to the plaintiff over the 10-year period was $10,131.30, and that said sum was to be paid during the first 2 years of the contract; that as a matter of right and equity said sum should be equally distributed over the 10-year period, and, if that were done, that the defendant has already paid more than the sum due at the time the replevin action, No. 4527 law, was instituted; that the plaintiff, having brought an action for the recovery of the equipment, could not in law collect the rentals due for the period subsequent to the demand for the equipment, and that therefore the defendant has overpaid the plaintiff in the sum of $5,529.17, for which sum it asks judgment.

The case was submitted to the court upon stipulation of facts and the written contract. The stipulation admits the jurisdictional facts, admits that the contract was duly executed and subscribed by both parties; that said contract was prepared by the plaintiff and was the standard form of contract used by the plaintiff at the said time throughout the United States; that said equipment was installed in the Savoy Theatre at Shawnee, Okl., on or about the 13th day of May, 1929, pursuant to the terms of said contract; that, in connection with the installation of said equipment, the defendant complied with the terms and provisions of the contract of paragraphs 7 and 9, and has complied with section 8 in all respects, except as to the payment for merchandise; that the amount due for merchandise is correctly listed as $6.70; that said merchandise was received by the

defendant, and no portion thereof has been paid for by said defendant; that the plaintiff has complied with all the provisions and terms of the written contract from the time of its execution to the cancellation of said contract hereinafter mentioned; that the defendant paid the plaintiff the sum of $2,362.50 provided for in paragraph 5 of the contract; that paragraph 6 of the contract provides for 104 weekly payments or installments of $104.45 each, and that each of said weekly payments or installments originally included an item of $29.75, service and inspection charges, which charges were voluntarily reduced by the plaintiff to $25 per week, effective with the week ending October 12, 1929; that said service and inspection charge was again voluntarily reduced to $20 per week, effective with the week ending April 12, 1930; that the defendant has paid the plaintiff 72 of said weekly installments or payments provided for in paragraph 6 of the contract, including the service and inspection charges as modified by voluntary reductions thereof, and the defendant admits the execution of the promissory note in the amount of $243.95, it being agreed that the amount of said note is included in the 72 installments or payments referred to as having been made, and that said note has not been paid; that no service was rendered by the plaintiff, or inspections of said equipment made in said theater after January 12, 1931.

The stipulation further admits that defendant failed to pay the installment or payment which fell due on the 4th day of October, 1930, and has paid no installments or payments thereafter; that, after repeated demand for payment, which demands were refused by the defendant, the plaintiff on or about the 24th day of April, 1931, made written demand on the defendant for possession of the equipment described in the contract; that on or about the 28th day of April, 1931, the plaintiff filed a replevin action in the United States District Court for the Western District of Oklahoma, being cause No. 4527 law, for the possession thereof which action is still pending; that the defendant gave a redelivery bond pursuant to which it held the possession of said equipment until about the 16th day of October, 1931, when it was surrendered to the plaintiff, and that the plaintiff has retained possession of said equipment since said date; that thereafter, on the 20th day of June, 1931, the plaintiff formally canceled the written contract involved in this action by a written notice; and that the action, No. 4613 law, is brought by the plaintiff for all weekly payments or installments falling due up to and including the week ending June 13, 1931.

The defendant contends that since the action, No. 4527, law, was instituted, the plaintiff has exercised its right of election of remedies; in other words, that the plaintiff is not entitled to possession of the equipment and also to collect the rentals due up to the time the equipment was removed, and sets up its contention that the replevin action constitutes an election of remedies. Its second defense is that the contract as written is unconscionable. The defendant also urges as a third defense (which really is a part of the second) that the contract contravenes the statute against penalties and forfeitures (St. Okl. 1931, §§ 9488–9490).

The material facts in this case having been stipulated, there is nothing left for the court but the construction of the contract. Paragraph 5 of the said contract provides for the payment of the installation charge. Paragraph 6 provides for a weekly rental of a certain sum for a period of 104 weeks, and further provides: "* * * And thereafter for the balance of the term of said license such weekly payment shall be in accordance with Product's then current schedule of weekly payments for similar licenses, but not exceeding one-fourth of the weekly payment hereinabove agreed upon to be paid for the first two years."

This language is clear, unambiguous, and constitutes a part of the written contract duly entered into by the parties hereto. The first charge is designated as an installation charge and that it should be paid in cash and by note on or before the completion of the installation. The second charge provided for in the contract is for certain weekly payments to be made during the first 2 years of the contract. The third charge provided for in the contract is that, after the 2-year payments shall have been completed, thereafter the weekly charge of a certain sum, not to exceed one-fourth of the weekly payment exacted during the first 2 years of the contract, shall be made.

The defendant contends that the contract should be so construed as to provide that the installation charge plus the sums paid over the period of the first 2 years should be divided into 520 payments, and that the contract in substance provides for paying the total sum over a period of 10 years, and therefore it should be divided equally. Doubtless this would have been a more satisfactory contract for the defendant, but that is not the contract that was entered into. There is no evidence

372

here of any fraud or deception that was practiced by the defendant. On the other hand, the inference to be drawn is that they were both practical picture show institutions with experience in those matters and that both parties to the contract knew what they were entering into at the time of the execution of the contract. The mere fact that conditions have changed since the execution of the contract, making defendant's business less lucrative, is no justification for an effort to revise or rewrite the contract. A contract once having been duly and legally entered into is expected to be carried out as written.

The defendant has rather exhaustively briefed the proposition that, notwithstanding the fact that the defendant had breached the contract by failing and refusing to pay the weekly rental from October, 1930, to June, 1931, and that therefore the plaintiff was entitled under the terms of the contract to the possession of the equipment, and that since the plaintiff had seen fit to bring an action in replevin for the possession of said equipment, the bringing of that action constituted an election of remedies to the extent that the plaintiff was not entitled to recover for the weekly rentals accruing during the default from October, 1930, to June, 1931, and is therefore barred, in bringing said action to recover the rentals due by the previous action in replevin. The contention of the defendant is not supported by the authorities cited in its brief. Many of the cases cited referred to the sale of property. It is true that, if one sells property, one may not maintain one action to recover the property and another for the purchase price thereof. The second action would be inconsistent with the first, and the rule in the election of remedies is applicable only where the two actions are inconsistent. If one purchases property and then is made to pay for the property, the property may not be recovered because upon the payment of the purchase price the title passes to the purchaser. In the case at bar, however, the plaintiff retained expressly in the contract the title to the property, and the contract in no uncertain terms provides for the payment of, first, an installation charge, and, second, weekly rentals during the life of the lease. To say defendant is entitled to retain the property without paying the rental thereof is in violation of the terms of the contract. Furthermore, the contract explicitly provides that upon the breach of the contract and the happening of other events the plaintiff should be entitled to possession of the property.

In Peters v. Bain, 133 U. S. 670, 10 S. Ct. 354, 362, 33 L. Ed. 696, the Supreme Court of the United States says: "The doctrine of election rests upon the principle that he who seeks equity must do it, and means, as the term is ordinarily used, that where two inconsistent or alternative rights or claims are presented to the choice of a party, by a person who manifests the clear intention that he should not enjoy both, then he must accept or reject one or the other. * * *"

The Supreme Court of Oklahoma in Invader Oil Corporation v. Commerce Trust Company, 111 Okl. 85, 238 P. 441, said: "No irrevocable 'election of remedy' exists, unless there is knowledge of material facts, and there are two inconsistent remedies, pursuit of either of which would accomplish same legal result."

The District Court of Appeal of California, in Crittenden v. St. Hill, 34 Cal. App. 107, 166 P. 1016, 1017, says:

"The defendant contends as a matter of law that, when she became in default, respondent had an election of two remedies: He could either commence an action for rent, or he could institute unlawful detainer proceedings; but, having elected to pursue the former, he thereby affirmed the lease and waived his right to the latter remedy. * * *

"In our opinion the mere institution of the rent action did not have the legal effect claimed for it, nor did it indicate a waiver of the right to maintain an action for the possession of the premises. By the original action plaintiff was seeking to recover the rent due him, and, being resisted in that action, he has resorted to a more expeditious proceeding to accomplish this result. * * * The rights litigated in the two actions are therefore entirely different; and where the law affords distinct, but not inconsistent, remedies, the election to follow one does not operate as a waiver of the other."

The court, therefore, is not impressed with the defendant's contention that the replevin action is a bar to an action to recover the rentals due.

The next proposition relied upon by the defendant is that the contract sued upon is unconscionable. Similar contracts have been construed many times by our courts, and a rule of construction of written contracts has been definitely determined and laid down for our guidance.

"It is not the province of a court, however to change the terms of a contract which has been entered into, even though it may be a harsh and an unreasonable one. Nor will the

dictates of equity be followed if by so doing the terms of a contract are ignored, for the folly or wisdom of a contract is not for the court to pass upon. Its terms, however onerous they may be, must be enforced if such is the clear meaning of the language used, and the intention of the parties using that language." 13 C. J. 541.

"A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful." Okla. Stats. § 9460 (1931).

"When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible, subject, however, to the other provisions of this article." Okla. Stats. § 9463 (1931).

"A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties." Okla. Stats. § 9467 (1931).

The foregoing section of our statutes was construed in King et al. v. Turner, 109 Okl. 77, 234 P. 564, and Anderson v. Reed et al., 133 Okl. 23, 270 P. 854.

In Hansbrough v. Peck, 72 U. S. (5 Wall.) 497, 18 L. Ed. 520, the court said, quoting from the syllabus: "The party who has advanced the money, or done an act in part performance of an agreement, and then stops short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done."

In Oklahoma Petroleum & Gasoline Co. v. Winship, 83 Okl. 146, 200 P. 844, 849, the court said: "The rule is well settled that, where there is an express contract of bailment, the terms thereof control, as the parties are entitled to impose upon each other any terms they may choose and may abridge, qualify or supersede the obligations which otherwise would arise from the bailment by implication of law."

A case cited by the plaintiff in its brief, which is applicable to both contentions of the defendant, is the Electrical Products Corporation v. Mosko et al., 88 Colo. 447, 297 P. 991. In that case the Electrical Company rented a sign to Mosko, retaining title in the sign; the court held, upon the default in payment of the rents, the plaintiff was not only entitled to possession of the sign, but to the rents due up to that time.

"For it is a rule of interpretation that, where a contract is fairly open to two constructions, by one of which it would be lawful and the other unlawful, the former must be adopted." Hobbs v. McLean, 117 U. S. 576, 6 S. Ct. 870, 29 L. Ed. 940.

"Where contracts are open to two reasonable interpretations one defeating a claim for balance due, the other enforcing it, the court is at liberty to adopt the latter interpretation." Cole Motor Car Co. v. Hurst (C. C. A.) 228 F. 280.

As to the defendant's third contention that the contract contravenes the statute against penalties and forfeitures, the court is of the opinion that these statutes are not involved in this contract. No penalties or forfeitures are exacted. It is true that there was an agreement that a certain sum should be paid for the installation of the machine; the parties agreed to that, and the sum was paid. They also agreed that the rent for 2 years should be at a certain rate and the rent for the remaining 8 years should be a certain sum. These are most assuredly matters about which the parties were contracting, and, they having entered into such a contract, the contract is binding. The counsel for the defendant cites the case of Hargrove v. Bourne, 47 Okl. 484, 150 P. 121, an Oklahoma case, but the court can hardly see how that case helps the defendant. Quoting from syllabus 5: "If a tenant wrongfully abandons leased premises before the expiration of the lease, the landlord may, at his option, re-enter and terminate the contract, and recover the rent due up to the time of the abandonment. * * * *"

This is exactly what the plaintiff seeks to do in this case. The recovery of its property and the collection of its rents, during the time the defendant had possession of the property as provided in the contract, constitutes neither a penalty nor a forfeiture.

The court is of the opinion that the rule is too well established for any doubt to exist. Under this contract upon the default, as admitted in the stipulation, the plaintiff was entitled to recover the possession of its equipment, and, in addition thereto, it was entitled to collect the weekly rentals, provided in the contract, falling due up to the time that the equipment was recovered.

In the replevin action, as admitted in the stipulation, the equipment has already been

recovered, which should be so shown in the judgment.

In No. 4613 the plaintiff is clearly entitled to judgment as prayed for in its petition.

Exception allowed defendant in each case. Forms of judgment may be submitted consistent with this opinion.