**WASHOMA PETROLEUM CO. et al. v. EASON OIL CO.**

No. 24076.   Sept. 10, 1935.

McKeever, Elam, Stewart & McKeever, for plaintiffs in error.

Simons, McKnight, Simons, Mitchell & McKnight, for defendant in error.

PER CURIAM. This cause was begun in the district court of Garfield county by the defendant in error against the plaintiffs in error, to recover a money judgment for the value of certain oil well casing let for hire by the plaintiff's assignor to the Washoma Petroleum Company under the terms of a written contract which stipulated for a guaranty bond to be given by the obligor to secure the fulfilment of the terms of the contract. The bond was made by the defendant Continental Casualty Company. This suit is on the contract and bond. The parties will be referred to as they appeared below.

The defendant Washoma Petroleum Company was desirous of drilling a test well for oil on a certain tract of land in Blaine county, Okla., and procured by written contract, dated March 19, 1929, the Healdton Oil & Gas Company to furnish for hire certain oil well casing to be used in drilling such test, for a consideration of an assignment of certain oil and gas leases on lands in the area where the test was to be made. The contract stipulated that the test should be begun not later than March 25, 1929, and drilled to a depth of 5,000 feet, unless oil or gas is found in paying quantities at a lesser depth, or unless impenetrable granite is encountered at such lesser depth, and to complete the same on or before 16 months from such date of beginning and to return said casing within the 16 months' period of time, or to pay for the same at a value to be fixed at 75 per cent. of the list price of the National Supply Company. The contract provided for a bond to guarantee the return of said rented property or payment thereof at the agreed price. During the month of April, 1929, the casing was delivered by the plaintiff's assignor to the Washoma Petroleum Company and by it was taken to the lease where the test was to be made. Afterwards, on the 1st day of November, 1929, the Healdton Oil & Gas Company assigned said contract to the plaintiff, Eason Oil Company. There is no contention as to kind, price, quality or quantity of the casing.

The Washoma Petroleum Company, defendant, began its operations on time and continued to drill the test, with intermissions and delays, until about March 12, 1931, some eight months after the expiration of the 16 months' period stipulated in the contract for the completion of the well and return of the casing, or an accounting for the value thereof, when it approached the plaintiff and asked for an extension of time, in order, as it contends, to complete the well and return the casing, or account for the same. However, it is the contention of the plaintiff that it was asked for an extension of time within which payment should be made for the casing, and it was granted such an extension of 30 days by and with the approval of the defendant Continental Casualty Company. These contentions form the issue of fact. The 30 days elapsed and the defendant drilling company made default under either contention and the plaintiff made demand upon both defendants for settlement of its account of $8,574.24, and settlement not being made by either, on the 12th day of May, 1931, the plaintiff filed this suit. The case was tried to the court without the intervention of a jury and resulted in a judgment for the plaintiff against the defendants for the sum of $8,-574.24.

There are only slight conflicts in the evidence, and the case was decided by the trial court upon a construction of the contract and bond, taking into consideration the acts and conduct of the parties. Motions for new trial were filed and overruled. Defendants submit four assignments of error. However, one, No. 3, is abandoned. Numbers 1 and 2 complain of the overruling of the motions for a new trial and No. 4 complains of rendition of judgment in favor of plaintiff and against the defendants. The defendants in their brief and supplemental brief discuss very briefly their contentions and cite no authority in support thereof, except as to the general rule of construction of contracts and the ascertainment of the mutual intention of the parties. The plaintiff and the defendants are in accord as to the general rule and no discussion is needed thereon. It will be noted that the contract has two primary provisions, viz.: First, the drilling clause, and second, the rental clause. The latter is divided into two parts: First, the rental provision, and second, the sale provision or option, and it is with these we are chiefly concerned. It will also be observed that the defendant Washoma Petroleum Company paid the rental price for the use of the casing for the period of 16 months by an assignment of oil and gas leases to the plaintiff's assignor. No contention is made by the plaintiff for the rental value for the overtime the casing was used by said defendant, but the matter is treated as having been an elec-

tion by the said defendant, to pay for the casing at the stipulated price upon its default to return the same within the period of 16 months specified in the contract. Did the Washoma Petroleum Company in making default to return the casing within the stipulated period thereby become liable to pay for the same at the election of the plaintiff?

It may be said in passing that the Washoma Petroleum Company did not complete the well to the stipulated depth until after this suit was filed, after which it offered to return the casing available for return to the plaintiff. The hole was dry and a part of the casing could not be withdrawn, and for this the defendant offered to account. The plaintiff refused the offers upon the ground that default was made to return the casing within the stipulated time, and the defendant, having failed to indicate its election to pay for the same, was liable for the value thereof, and the plaintiff thereupon elected to require an accounting for the value of the casing as provided in the contract. Both companies being engaged in the business of oil and gas production, it must be presumed they had in mind the difficulties and hazards involved in drilling a test well in wildcat territory; and that they knew if a producing well was obtained a part of the casing would remain in the well, and for this quantity the drilling company would have to pay the agreed price; or that if the test was a dry hole a part of the casing might not be recoverable therefrom, and for this the drilling company would have to pay at the agreed price; or that if the test failed on account of a crooked hole or other hazards a part of the casing might be lost, and for this the drilling company would have to pay at the agreed price. All of these matters must have been in the minds of the contracting parties at the time of the making of the contract and bond, and it is in relation to these matters that the acts and conduct of the parties are pertinent, not to vary the terms of a written contract, but to shed light on the ascertainment of the intention of the parties.

This court has indicated the chief object to be attained in construing contracts in the following language (we consider it unnecessary to quote at length from the decisions, and, therefore, quote the syllabus only):

"The chief object in construing contracts is to ascertain the intention of the contracting parties, and subsequent acts and conduct of the parties may be considered in arriving at the intention." D'Yarmett v. School Dist. No. 27, 72 Okla. 124, 179 P. 20; Gladys Bell Oil Co. v. Clark, 147 Okla. 211, 296 P. 461.

To determine the intention of the parties, this court has said:

"* * * That it is the duty of the court to place itself, as far as possible, in the position of the parties at the time the contract was entered into. * * *" Withington v. Gypsy Oil Co., 68 Okla. 138, 172 P. 635.

So likewise the court has indicated how the meaning and intention is to be gathered:

"The meaning and intention of the parties as expressed by a written contract are to be gathered from the contract, the nature of the subject-matter contracted about, the situation of the parties, and conduct of the parties in relation to the contract." C. R. I. & P. Ry. Co. v. Basey, 118 Okla. 87, 246 P. 626.

We have a section in our statutes relating to the matters under consideration as follows:

Section 9482. "Time is never considered as of the essence of a contract unless by its terms expressly so provided."

There are many exceptions in case of optional contracts to the above section which has been construed in many cases, and the rule is stated thus:

"In case of an option, time is of the essence of the contract, unless the contract expressly provides that it shall not be." Mitchell v. Probst, 52 Okla. 10, 152 P. 597.

To the same effect is Crutchfield v. Griffin, 139 Okla. 35, 280 P. 1075, and cases cited therein.

In dealing with such a class of contracts, the court has said:

"Where one of the parties to a contract obligates himself to do one of two things on the performance of certain services by the other, the one making such alternative promise has a right to elect which alternative he will perform, provided he makes such election before default; but, if he fails to make such election in time, then the promisee may elect which alternative he will accept." Kramer v. Ewing, 10 Okla. 357, 61 P. 1064.

See 13 Corpus Juris 630, for like rule.

As to the contention of the defendants that it was the duty of the plaintiff to exhaust its remedies against the Washoma Petroleum Company before the defendant Continental Casualty Company could be made to respond, it is sufficient to say that section 155, Okla. Stats. 1931, and the de-

cisions of this court, lay at rest such contention. The obligee may join the obligor and the guarantor in a suit to recover on the obligation.

The Supreme Court acknowledges the aid of Attorneys Thos. H. Wren, Wellington K. Merwine, and C. J. Pinkston in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Wren and approved by Mr. Merwine and Mr. Pinkston, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, PHELPS, and CORN, JJ., concur.